UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all
similarly situated,

        Plaintiffs,                        Case No:  1:24-cv-933

                                                     Hon _____

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, in her official
capacity as Chair of the Michigan
Democratic Party, and CHRISTINE
JENSEN, in her official capacity as
executive director of the Michigan
Democratic Party,

        Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com
*Attorney for Plaintiff*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs are members of the Michigan Democratic Party (MDP). On August 24, 2024, the MDP held its fall nominating convention to, among other things, nominate candidates for several statewide offices including the University of Michigan Board of Regents. Multiple, serious irregularities marred the voting and reporting processes violating Plaintiffs' rights under the United States Constitution, the Michigan Constitution, and the laws of the State of Michigan. Plaintiffs brought these irregularities to the attention of the MDP, but were ignored.  All efforts to compel the MDP to rectify the matter have failed. Therefore, come now Plaintiffs, by and through their attorneys, and file this Complaint for Declaratory and Injunctive relief, against the MICHIGAN DEMOCRATIC PARTY and Chairperson LAVORA BARNES, in her professional capacity, and against JOCELYN BENSON, in her official capacity as Michigan Secretary of State and, in support thereof, state the following:

## PARTIES

1.     Plaintiff HUWAIDA ARRAF ("Arraf") is an individual residing in Macomb Township, in the County of Macomb, Michigan. At all times relevant, she was a registered voter in the State of Michigan, and a member in good standing of the Michigan Democratic Party, entitled to vote in the Michigan Democratic Party's August 24, 2024 State Convention. Arraf is the principal of the Huwaida Arraf for

2

UMich Regent campaign and was a candidate in the race for the University of Michigan Board of Regents.

2.     Plaintiff JENNIFER KIRBY is an individual residing in the City of Ann Arbor, County of Washtenaw, Michigan who, at all times relevant, was a duly-registered voter in the State of Michigan, and a member in good standing of the Michigan Democratic Party, entitled to vote in the Michigan Democratic Party's August 24, 2024 State Convention.

3.     Plaintiff MADELEINE TOCCO is an individual residing in the City of Jackson, County of Jackson, Michigan who, at all times relevant, was a duly-registered voter in the State of Michigan, and a member in good standing of the Michigan Democratic Party, entitled to vote in the Michigan Democratic Party's August 24, 2024 State Convention.

4.     Defendant MICHIGAN DEMOCRATIC PARTY (MDP) is a political party, duly incorporated in the State of Michigan and having its principal office located in the City of Lansing, County of Ingham. The MDP is governed by the Democratic State Central Committee (DSCC) which oversees elections for the Democratic Party's nominees to certain statewide offices, including the election for the University of Michigan Board of Regents.

5.     Defendant LAVORA BARNES, at all times relevant, was the chairperson of the Michigan Democratic Party, tasked with carrying out the

programs and policies of the MDP State Conventions and the Democratic State Central Committee.

6.      Defendant CHRISTINE JENSEN, at all times relevant, was the executive director of the Michigan Democratic Party, tasked with assisting the chairperson in carrying out the programs and policies of the MDP State Conventions and the Democratic State Central Committee.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343(a)(3) and (4), as it involves a federal question and seeks redress for the violation of Plaintiffs' constitutional rights.

8.      This is an action for equitable relief brought pursuant to 42 U.S.C. §1983, et seq., and the statutes and common law of the State of Michigan

9.      Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

10.      Venue is proper in this Court pursuant to 28 U.S.C. 1391 as the events giving rise to this claim occurred in the western district of Michigan, and both Defendants have their primary base of operations in this district.

## INTRODUCTION

11.     Every even-numbered year, at their fall state conventions, each political party, including Defendant MDP, may nominate two candidates for the governing boards of Michigan's three flagship universities – University of Michigan, Michigan State University, and Wayne State University.   M.C.L. § 168.282.

12.     While courts generally do not adjudicate matters involving the internal affairs of political parties, where the challenged action of a political party infringes on a specific constitutional or statutory right, such as the right to vote or hold public office, courts will intervene.  *Smith v. Allwright* 321 U.S. 649 (1944). Indeed, it is well-settled that where a state permits political party committees to exercise a portion of the state's sovereignty in connection with elections, there must be conformity with the guarantees of the federal constitution. *Id.* (holding that the Democratic Party of Texas was a state actor subject to the federal constitution); *Terry v. Adams*, 345 U.S. 461 (1953) (holding that political-party-controlled primaries are subject to the Fifteenth Amendment); *Nixon v. Condon*, 286 U.S. 73 (1932) (concluding that the Fourteenth Amendment applies to the conduct of political parties using delegated government authority to conduct state primaries).

13.     The State of Michigan has delegated to political parties the responsibility of nominating candidates for certain state-wide offices, including for

the University of Michigan Board of Regents, *see* M.C.L. § 168.282. This action alleges violations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, the Michigan Constitution, and the laws of the State of Michigan, and is therefore justiciable.

14.     **FACTUAL BACKGROUND**

15.     On August 24, 2024, pursuant to M.C.L. § 168.282, Defendant MDP held its annual State Nominating Convention at the Lansing Center, in the City of Lansing, County of Ingham to, among other things, elect the party's nominees for a number of statewide offices, including for the University of Michigan Board of Regents.

16.     The Bylaws or Rules of the Michigan Democratic Party state that "In order to vote at any Convention, Caucus or meeting of any unit of the MDP at any level, a person must be a member of the MDP for at least thirty (30) days prior to that Convention, Caucus or meeting." [Exh. 5, Rules of the MDP, Art. 3.2.1]

17.     At the State Nominating Convention, Plaintiff Huwaida Arraf was one of three candidates running for two available seats on the University of Michigan's Board of Regents.

**First and Fourteenth Amendment Violations**

18.     Plaintiffs and hundreds of similarly situated individuals, are duly-registered voters in the State of Michigan, all of whom had signed up to become

members of the MDP on or before July 25, 2024--at least 30 days before the August 24, 2024 State Nominating Convention.

19.    On August 24, 2024, Plaintiffs and hundreds of similarly situated individuals, attempted to exercise their right to vote in the election to nominate two (2) Democratic candidates to appear on the general election ballot for two (2) available seats on the University of Michigan Board of Regents.

20.    The election for the Democratic nomination for University of Michigan Regents was marred by irregularities, resulting in the disenfranchisement of Plaintiffs and other similarly situated voters. These irregularities include:

a.  Voter intimidation and harassment of Plaintiff Arraf's supporters;

b.  Racial profiling and an increase in police presence targeting minority voters;

c.  MDP staff falsely telling Arraf supporters seeking credentials that they were not in the system, that their memberships had expired, or that they otherwise did not have voting privileges;

d.  MDP staff giving Arraf supporters incorrect information, including that they "could leave and vote from home," even though the MDP Call to Convention and Rules Report explicitly state that votes have to be cast in person from the convention floor; [Exh. 1, MDP Call to Convention, p. 10; Exh. 6, Rules Report, V(C)]

e.  The MDP losing or otherwise missing data necessary for accurate electronic tallying of the vote count pursuant to the weighted formula used by the MDP;

f.  MDP staff manually entering or altering voting data, without oversight or checks;

g.  The MDP excluding Arraf's campaign, including Plaintiff Arraf herself, from the vote tabulation area thereby barring a campaign representative from observing the manual entry of data and the vote tabulation. Meanwhile, the MDP allowed supporters of the other candidates and at least one of the other candidates herself into the area to monitor the manual entry of data and vote tabulation.

h.  The MDP calling the vote closed at 4:39 p.m. but failing to announce results until approximately 7:10 p.m.—more than 2.5 hours after allegedly closing the vote, without ever explaining to Plaintiffs the reason for the delay.

i.  Defendant LAVORA BARNES refusing to turn over the raw data requested by Plaintiffs or to explain why neither Arraf nor any of her campaign staff were allowed to observe the vote tabulation;

j.  The MDP offering no process by which Plaintiffs or other MDP members could challenge or contest the results of the election.

21.    The MDP 2024 State Nominating Convention was scheduled to take place from 3:00 p.m. to 6:00 p.m. on Saturday, August 24, 2024. [Exh. 1, Call to Convention, p.5]

22.    Prior to the official start of the Convention, MDP staff was tasked with electronically assigning voting credentials to MDP members who had been members since at least July 25, 2024 and who were present in person. This process took place from 8:00 a.m. until 2:00 p.m.[1]

---

[1] However, according to the Call to Convention [Exh. 1] which was filed with the Secretary of State, was supposed to begin a week prior, on Friday August 16th at 9:00 a.m. M.C.L. § 169.593.

23.   In the days and weeks leading up to the Convention, hundreds of new MDP members and supporters of Plaintiff Arraf, received emails from Defendant MDP informing them that their membership had expired, even though they were new members who had all registered between May 1 - July 25, 2024.

24.   On the day of the Convention, MDP staff falsely told many Arraf supporters seeking credentials that they were not in the system, that their memberships had expired, or that they otherwise did not have voting privileges;

25.   Both on the day of the Convention and prior thereto, MDP staff gave Arraf supporters incorrect information, including that they "could leave and vote from home," even though the MDP Call to Convention explicitly states that votes had to be cast in person from the convention floor; [Exh. 1, MDP Call to Convention, p. 10]

26.   The MDP State Nominating Convention officially opened at approximately 3:00 p.m. Saturday, August 24, 2024, at which time MDP Chair, Defendant Lavora Barnes, presented a credentialing report to the gathered membership, announcing that 1248 members had been properly credentialed to vote on Convention business that day. [Exh. 22, Journalists' posts reporting on Convention]

27.   Convention business included nominating two (2) candidates for State Supreme Court; two (2) candidates for State Board of Education; two (2) candidates

for Michigan State University Board of Trustees; two (2) candidates for Wayne State University Board of Governors; and two (2) candidates for University of Michigan Board of Regents. [Exh. 1, Call to Convention, p.5]

28.     The single contested election of the Convention was for the nomination of two University of Michigan Regents, for which there were three (3) candidates, including Plaintiff Arraf, for two (2) positions.

29.     All of the other nominations were uncontested, presented and approved by voice vote without objection.

30.     The MDP conducted the vote for the nomination of University of Michigan Regents from approximately 3:37 p.m. until approximately 4:39 p.m., utilizing the VOATZ voting platform.

31.     According to the company, VOATZ, Inc. is "a mobile elections platform that enables citizens to vote without having to visit their polling place or submit a paper ballot via mail … All votes submitted on the Voatz platform generate a paper ballot for tabulation, along with a receipt for voters to verify their selections." https://voatz.com/faq/

32.     Despite an official announcement that the vote had closed at or about 4:39 p.m., the VOATZ application continued to state that voting was open until 7:00 p.m, leaving open the possibility that votes were impermissibly filed after voting had officially closed. [Exh. 2, VOATZ screenshot]

33.     After the vote officially closed, VOATZ staff at the convention noted there was missing data for "many" of the votes submitted, making it impossible to accurately tabulate the votes using the MDP's weighting formula.

34.     According to Defendant MDP, the weighted formula is designed to ensure that the voting strength of each county (or portion thereof within a congressional district) delegation at the assembly reflects the Democratic voting strength of that county (or portion), regardless of how many delegates are present from each county. One State Convention vote is assigned for each 500 votes or major fraction thereof cast for the Democratic candidate for Secretary of State in 2022. [Exh. 3, MDP Rules for Voting and Elections, 4.1]

35.     Following the discovery of missing data that did not allow the VOATZ system to properly tabulate the votes of the election, the VOATZ staff turned over the raw data to MDP staff and left the Lansing Center.

36.     MDP staff then spent the next 2.5 hours "backstage" -- in an area closed off to the public, manually inputting or altering data and calculating weight values, without oversight.

37.     During this time that the MDP staff was manually altering data, Plaintiff Arraf and her campaign staff were repeatedly denied the right to observe the data entry and vote tabulation.

38.     While Arraf and members of her campaign team were denied the right to monitor the vote tabulation, other interested parties, including union leaders who had endorsed the other two candidates, incumbent candidate Denise Ilitch, as well as current regent of the University of Michigan, Paul Brown, were observed going in and out of the vote tabulation area.

39.     Over 2.5 hours after the vote officially closed, and before the announcement of the vote results, MDP staff whisked one of the candidates— Shauna Ryder Diggs—out of the convention hall and called in 15-20 armed police officers, in a blatant show of bigotry against Plaintiffs and Arraf supporters, many of whom are Muslims and people of color.

40.     At approximately 7:10 p.m., Convention chair Sarah Anthony, came on stage to relay the vote results, announcing that the other two candidates had prevailed over Plaintiff Arraf despite Arraf having received the support of an overwhelming majority of the voting delegates.

41.     Because popular support at the Convention was clearly in favor of Arraf, MDP members in the convention hall objected and began to demand that the MDP "show us the math."

42.      Plaintiff Arraf immediately communicated to Defendant Christine Jensen, the executive director of the Michigan Democratic Party, that she did not accept the process or the announced results and wanted to lodge a challenge.

43.     Defendant Jensen told Arraf that the process for contesting the vote results was contained in the Call to Convention and Rules Report; however, no such information is or was contained in either of these documents.

44.     Defendant Jensen then declared that there was nothing more to be done and left the area.

45.     Shortly thereafter, MDP officials instructed armed police officers to clear Plaintiffs and other Arraf supporters from the Lansing Center.

46.     Later that same evening, on August 24, 2024, Arraf sent an email to Defendants Barnes and Jensen, as well as the MDP parliamentarian and MDP legal counsel, reiterating that she did not accept the election results and wanted to lodge a challenge. Arraf also asked that Defendants send her the raw voting data so she could conduct an audit. [Exh. 8, Arraf email contesting vote and requesting data, August 24, 2024]

47.     On Sunday, August 25, 2024, Defendant Barnes informed Arraf that the MDP did not have a mechanism by which to challenge the vote results and that Arraf's only recourse was to petition the MDP Appeals Committee if she felt aggrieved. [Exh. 4, Barnes email to Arraf, Aug. 24, 2025]

48.     The MDP Appeals Committee takes between 30 and 45 days to issue a resolution to a complaint [Exh. 5, Rules of the MDP, Article 12], making it an ineffective remedy for concerns around the validity of a nominating convention

13

election result, as the MDP's State Nominating Convention is generally held only two weeks from the deadline to finalize names for the November ballot.

49.     Nevertheless, Plaintiff Arraf submitted a complaint to the MDP Appeals Committee on August 28, 2024, with a request that the consideration of the matter be expedited in light of the deadline to finalize candidates for the November ballot. [Exh. 11, MDP Appeal; Exh. 12, Arraf email submitting complaint, August 28, 2024]

50.     Defendant Barnes denied Arraf's request to expedite consideration of the serious election matters raised in Arraf's petition. [Exh. 13, Barnes email acknowledging appeal; and Exh. 14, Arraf email confirming refusal to expedite]

51.     Defendants did not provide Plaintiffs, and particularly Plaintiff Arraf with a mechanism by which to request a recount or otherwise challenge the results of the election—a process that is vital to the integrity of the election process and protecting voters' constitutional rights.

52.     Defendants have also ignored Plaintiffs' requests to release the raw voting data from the VOATZ machine as well as a list of MDP members properly credentialed to vote by 2:00 p.m. on Saturday, August 24, 2024.

53.     The only data that Defendants provided to Plaintiff Arraf was the data manipulated by MDP staff for over 2.5 hours without oversight or a challenger from

Arraf's campaign. [Exh. 4, Barnes election results email, August 25, 2024 and Arraf response]

54.     Arraf's campaign analyzed the data provided by Defendants and found a large number of discrepancies and errors including, but not limited to:

a.  the presence of 1422 voters, which is 174 more voters than the 1248 officially reported credentialed at the Convention;

b.  since the weight of each delegate's vote is dependent on the number of delegates present and voting from a county (or fraction thereof), an unknown, unaccounted for extra 174 individuals change the weighted value of all delegates from their respective counties;

c.  a number of voters whose district and county information were listed incorrectly, thereby affecting the weight assigned to their vote; ANY error affects the weighted value of ALL delegates from that county, and any error in selection or blank selection affects the overall result of the election;

55.     Plaintiff Arraf informed Defendants that there were serious flaws found in the voting data, including a number of extra voters, that needed to be resolved in order to ensure the integrity of the election. [Exh. 7, Arraf email to MDP -- Halt transmitting names, August 26, 2024]

56.     Defendants MDP and Barnes did not respond to Arraf's concerns nor take any corrective action. [*Id.*]

### Violation of the Michigan Constitution

57.     The governance and autonomy of Michigan's three flagship universities -- University of Michigan (UM), Michigan State University (MSU), and

Wayne State University (WSU) is enumerated in the Michigan Constitution. Mich. Const. art. VIII, sec. 5. Unlike Michigan's 12 other public universities and public universities across the country, the Michigan Constitution provides that UM, MSU, and WSU are to be governed by independently elected, eight member boards, making the boards of these three universities elected by and accountable to the voters of the State of Michigan. *Id.*

58.     Michigan Election Law delegates the nomination of candidates for UM, MSU and WSU to the political parties and outlines the procedure by which this is to be done. M.C.L. § 168.282.

59.     Specifically, M.C.L. § 168.282 provides that "[a]t its fall state convention each political party may nominate 2 candidates for membership" to each of these three universities.

60.     As Defendant MDP is delegated the power to decide part of the field of candidates who will appear on the general election ballot, the process by which it does so is subject to constitutional regulations.. *Morse v. Republican Party of Va.*, 517 U.S. 186, 197-200 (1996)

61.     On August 24, 2024, Defendant MDP conducted an election for University of Michigan Board of Regents that was marred by irregularities and void of oversight or and a process for redress.

62.   The election process conducted by Defendant MDP violated the constitutional rights of Plaintiffs and other similarly situated MDP members to meaningfully participate in the political process.

63.   Furthermore, Defendants' knowledge of the irregularities in the voting process as well as the significant errors and discrepancies in the voting data, and choosing to ignore these has effectively voided the right of MDP members to elect its nominees for University of Michigan Regents, in violation of Michigan election law and the state constitution. Mich. Const., art. VIII, sec. 5; M.C.L. § 168.282.

64.   Defendants' blatant disregard for the integrity of the University of Michigan Regents election process violates the mandate of Article VIII, section 5 of the Michigan Constitution that regents of the University of Michigan be duly elected.

## Breach of Contract

65.   Section 597 of Michigan Election Law states:

> At its spring state convention in each odd numbered year, each political party shall select a state central committee as herein provided, which committee shall consist of 2 men and 2 women from each congressional district. The state convention shall select a chairman and 2 vice chairmen of the state central committee and such chairman and vice chairmen shall have the right to vote on all questions arising in the committee. The state central committee so constituted shall appoint a secretary and a treasurer and such other officers as in its judgment may be proper and shall have the power to fill any vacancy that may occur in its membership or any of its offices. The term of service of a state central committee shall continue until the election of its successor. M.C.L. § 168.597

66.     The Democratic State Central Committee (DSCC) of the Michigan Democratic Party was constituted on February 11, 2023 at the Spring State Convention held at Huntington Place in the City of Detroit, County of Wayne.

67.     Consistent with Section 597 of Michigan's Election Law, Article 6 of the MDP Bylaws identifies the DSCC as the governing body of the Michigan Democratic Party. [Exh. 5, Rules of the MDP].

68.     The DSCC is governed by its bylaws. [*Id.*, Article 6.0.1]

69.     Bylaws constitute a "binding contractual agreement between [an] [entity] and its members." *Colin v Upton*, 313 Mich App 243, 255 (2015).

70.     A political party's failure to comply with its bylaws constitutes a breach of contract. *See Hillsdale County Republican Executive Committee v Daren Wisely, et al*, Opinion and Order of the 1st Circuit Court for the County of Hillsdale, issued Oct. 5, 2023.

71.     The Michigan Democratic Party violated its bylaws by improperly tabulating the votes of the University of Michigan Regent race, by allowing non-credentialed members to vote, by improperly ratifying the nomination of Diggs and Ilitch, by refusing to release the raw, unedited voting data, and by engaging in discrimination against Plaintiffs and other Arraf supporters.

***Wrong Method to Tabulate Votes***

72.     The MDP Rules on Voting and Elections (RVE) specify the only two methods of voting allowed in the MDP—one method to be used exclusively for single-position offices such as Chair or Treasurer, and another to be used exclusively for multiple-position offices, like committee or board members where multiple people hold the same title, like Regent. [Exh. 3, Rules for Voting and Elections]

73.     At the August 24, 2024 Nominating Convention, there were two seats open for University of Michigan Board of Regents, making it a multi-position office per RVE Section 2.1.

74.     As the election was for a multi-position office, the MDP was required to use the slate method of voting pursuant to Sections 6.1 and 6.4 of the RVE [Exh. 3, MDP Rules for Voting and Elections]

75.     The only rules for voting publicized by Defendant MDP, as required pursuant to Section 2.1 of the MDP Bylaws, were the RVE on the MDP website, mandating slate voting for multiple-position offices. [Exh. 5, MDP Rules, Articles 2.1 and 2.5]

76.     The MDP erred in using majority voting tabulation, which is reserved exclusively for single-position offices, when they should have used slate voting tabulation. [Exh. 3, Rules for Voting and Elections, Sections 6.1 and 6.4]

77.      In fact, two of the candidates—Shauna Ryder Diggs and Denise Ilitch— ran on a single slate, the Unity Slate. [Exh. 18, Unity Slate]

19

78.     The Unity Slate, promoting Diggs and Ilitch as a single slate, was widely promoted, including with a mailer, bearing the official logo of Defendant MDP, sent to the homes of MDP members, prior to the Convention. [*Id.*, p. 1]

79.     Tabulated according to majority voting rules, the Unity Slate wins both seats; however, tabulated according to slate voting rules, the Unity Slate wins 1 seat, and Plaintiff Arraf  wins 1 seat. [Exh. 15, Slate voting explanation; Exh. 19, Affidavit of Liano Sharon]

***Permitting Non-Properly Credentialed Members to Vote***

80.     Article 10 of the MDP Bylaws articulates the rules governing MDP State Conventions, including the August 24, 2024 State Nominating Convention.

81.      Pursuant to Article 10.4 of the Bylaws, State Conventions and related activities are to be governed by the Call to Convention and permanent rules adopted by the Convention.

82.     The Call to Convention and the Rules Report, adopted by the Convention, make clear that, in order to vote at Convention, a person must be a registered voter in the State of Michigan and have been a member of the MDP for at least 30 days. Furthermore, a member must be properly credentialed through the VOATZ app, the window for which closed at 2:00 p.m. on August 24, 2024, and must be present in person to vote. [Exh. 1, Call to Convention, pp. 4, 6,7, 9, 10; Exh. 6, Rules Report]

83.     Thus, the only members permitted to vote at Convention are those who are properly credentialed and present in person. [Exh. 1, Call to Convention, pp. 7, 9, 10].

84.     At the start of the Convention, Defendant Barnes reported that the number of credentialed voters entitled to vote on Convention business was 1248. [Exh. 22, Journalists' posts reporting on Convention]

85.     The voting data file that Defendant Barnes emailed to Arraf on August 25, 2024, listed 1422 voters, a difference of 174 more voters than were reported credentialed at the Convention.

86.     In an email sent at 8:47 a.m. on Monday, August 26, 2024, Arraf alerted Defendants to this significant discrepancy, and asked that the MDP not submit the names of Diggs and Ilitch to the Secretary of State until the matter was resolved. [Exh. 7, Arraf email to MDP, August 26, 2024]

87.     Defendants ignored the matter, proceeding to submit the names of Diggs and Ilitch to the Secretary of State as the duly elected nominees for University of Michigan Board of Regents, knowing that there were significant discrepancies and errors in the voting data.

88.     By permitting more members to vote in the election for University of Michigan Board of Regents than were properly credentialed to vote, Defendants violated their bylaws, particularly Article 10.4, as well as the rules governing MDP

21

State Convention proceedings. Moreover, this violation served to dilute the vote of every other delegate present and properly credentialed from the respective districts and counties.

*Improperly Ratifying Election Results*

89. Pursuant to the Call to Convention and Section II(C) of the Rules Report adopted at the start of the Convention, the DSCC was required to meet immediately following the adjournment of the Convention "to canvass and ratify the convention proceedings." [Exh. 1, Call to Convention, p.6; and Exh. 6, Rules Report]

90. A majority of DSCC members were required to attend the post-Convention meeting to constitute a quorum for the proper conduct of DSCC business. [Exh. 5, Rules of the MDP, Article 8.5].

91. The DSCC did not have the quorum required to conduct the business of ratifying the proceedings of the Convention.

92. Upon information and belief, the number of MDP State Central Committee members is currently between 182 and 282.

93. A DSCC member who was present at the post-convention meeting reports that "there were only about 20 people present" and that "we definitely did not have a quorum"; nonetheless the DSCC proceeded to conduct business and ratify the convention proceedings, in violation of Article 8.5 of the MDP Bylaws.

94.     The DSCC ratified the convention proceedings, including the nomination of Shauna Ryder Diggs and Denise Ilitch for the University of Michigan Board of Regents, without having a quorum present as required by Article 8.5 of the MDP Bylaws, thereby invalidating said ratification.

***Refusal to Release Voting Data***

95.     At approximately 9:22 p.m. on the evening of August 24, 2024, Plaintiff Arraf sent an email to Defendants Barnes and Jensen, with a copy to Nathan Triplett, the MDP Parliamentarian and MDP legal counsel, Sheila Cummings, reaffirming that Arraf did not accept the announced results of the vote for the University of Michigan Board of Regents and reiterating her request that the MDP release the raw data from the VOATZ system immediately. [Exh. 8, Arraf email contesting vote and requesting data, August 24, 2024]

96.     The following day, Defendant Barnes responded to Arraf's email, stating that the requested data would be provided to all candidates. [Exh. 9, Barnes response to Arraf challenge and date request, August 25, 2024]

97.     At 4:29 p.m. on Sunday, August 25, 2024, Defendant Barnes sent an email, presumably to all candidates, purporting to have attached "the raw vote results and the proportional vote weight per delegate." [Exh. 4, Barnes data email, and Arraf response, August 25, 2024]

98.     In reality, the data sent by Defendant Barnes, was not the raw vote data from the VOATZ system that was requested by Arraf, but rather the data that was altered by MDP staff during the over 2.5 hours that they were manually entering data and preventing Arraf or anyone from her campaign from observing the process.

99.     At approximately 5:18 p.m. on Sunday, August 25, 2024, Plaintiff Arraf responded to Barnes's email, noting that the data Barnes had sent was not the raw data that Plaintiff had requested, but rather the data with all the manual entries made by the MDP. Plaintiff Arraf reiterated her request for the raw and unedited data from the VOATZ system. She also requested the complete list of MDP members who were properly credentialed to vote at the August 24, 2024 convention. [*Id.*]

100.    Arraf's campaign conducted an audit of the MDP voting data provided by Defendant Barnes and discovered significant irregularities and mistakes that cast doubt on the accuracy and fairness of the election results.

101.    Specifically, Plaintiff Arraf's campaign discovered the following:

a. errors in the district information listed for some voters, which affects the weighting formula used by the MDP to calculate votes;

b. some voters with no district information listed and therefore no weight assigned to their vote;

c. a significant discrepancy between the number of votes recorded in the MDP data (1422) and the number of properly credentialed voters announced at the beginning of the convention (1248)—a difference of 174 extra voters.

102.   At 8:47 a.m. on Monday, August 26, 2024, Arraf sent an email to Defendants alerting them to the fact that errors were found in the MDP voting data that call into question the legitimacy of the results and requesting that the MDP refrain from certifying the results to the Secretary of State until the matter could be resolved. [Exh. 7, Arraf email to MDP reporting errors, August 26, 2024]

103.   Plaintiff Arraf received no response from Defendants Barnes or Jensen or any MDP official.

104.  By the afternoon of Monday, August 26, 2024, Defendants had submitted the names of Shauna Ryder Diggs and Denise Ilitch to the Secretary of State and said names were listed on the Secretary of State's website as the duly elected Democratic nominees for the University of Michigan Board of Regents.

*See* https://mielections.us/election/candlist/2024GEN_CANDLIST.html

105.   Defendants submitted the names of Diggs and Ilitch to the Secretary of State despite being on notice that there were serious discrepancies and errors in their voting data that called into question the legitimacy of the announced vote results, and despite the fact that the nominations had not been properly ratified by the DSCC, as required by the Call to Convention and applicable Rules Report.

106.  On Tuesday, August 27. 2024, Plaintiff Arraf again wrote to Defendants Barnes and MDP leadership to reiterate her request for the release of the raw voting data as well as a list of MDP members properly credentialed to vote at

the fall nominating convention. Arraf also reiterated her invitation to the MDP to resolve the matter amicably but received no response. [Exh. 10, Arraf email to MDP, August 27, 2024]

107.   On Wednesday, August 28, 2024. Arraf filed a petition with the MDP Appeals Committee pursuant to Rule 12 of the MDP bylaws, reporting grievances and requesting the release of the voting data. [Exh. 11, MDP Appeal] In light of the short timeframe before names had to be finalized for the November ballot, Arraf requested an expedited review of the petition. [Exh. 12, Email submitting MDP email, August 28, 2024]

108.   Barnes acknowledged receipt of the petition, informing Arraf that it would be handled according to the MDP Bylaws, which provide the Appeals Committee 30-45 days to resolve a complaint. [Exh. 13, Barnes email acknowledging Appeal, August 29, 2024]

109.   Defendant Barnes's response essentially denied Arraf's request for expedited review. [Exh. 14, Arraf email confirming that MDP denying expedited review, August 29, 2024]

110.   The MDP did not and does not provide a mechanism other than the Appeals Committee to request a recount or otherwise challenge the legitimacy of election results.

111.    The Appeals Committee cannot provide Plaintiffs with effective relief as its timeline for addressing and resolving a complaint extends beyond the time by which any action can be taken to remedy vote errors. [Exh. 5, Rules of the MDP, Article 12.5]

112.    Defendants' refusal to release the raw, unedited voting data and the list of properly credentialed voters repeatedly requested by Arraf, Plaintiffs Tocco and Kirby, as well as hundreds of similarly situated MDP members is a violation of Article 2.17 of the MDP Bylaws which prohibits votes from being taken by secret ballot at any meeting of any MDP unit.

113.    Statewide Conventions of the MDP, including the August 2024 Nominating Convention, constitute a unit of the MDP.  [Exh. 5, Rules of the MDP, Article 10.1].

114.    By refusing to release the raw voting data, Defendants have created a situation by which the vote for University of Michigan Board of Regents has essentially become a secret ballot, in violation of Article 2.17 of the MDP Bylaws.

***Discrimination***

115.    Article 2.10 of the MDP's Bylaws states that

> All MDP units shall support the broadest possible participation without discrimination on grounds of actual or perceived race, color, creed, sex, age, national origin, economic status, religion, ethnic identity, ancestry, marital status, sexual orientation, gender identity, physical appearance or disability.

116.   As outlined herein, the MDP engaged in racial profiling, voter intimidation and harassment of Plaintiffs and other Arraf supporters; by, among other things, increasing security because of their presence, making it difficult to obtain voting credentials, providing blatantly incorrect information about how to vote, and unnecessarily calling in armed police officers to deal with Plaintiffs and other Arraf supporters, all of which had the effect of disenfranchising Arraf supporters, including Plaintiffs herein, based on their race, religion, ethnicity, national origin, age and/or economic status in violation of Article 2.10 of the MDP Bylaws.

117.   According to Article 2.7 of the MDP bylaws, "[a]ll meetings of all MDP units shall be open to the public regardless of actual or perceived race, color, creed, sex, age, national origin, economic status, religion, ethnic identity, ancestry, marital status, sexual orientation, gender identity, physical appearance or disability."

118.   Following the announcement of the results of the University of Michigan Regents race, Convention Chair Sarah Anthony announced that Arraf's supporters, including Plaintiffs, had to clear the building so that a scheduled meeting of the DSCC could commence.

119.   Anthony instructed Plaintiffs and other Arraf supporters to leave the building so that a meeting of the DSCC could commence even though according to

the MDP Bylaws, the meetings of all MDP units, including the DSCC, are to be open to the public without discrimination.

120.   None of Arraf's supporters, including Plaintiffs herein, the majority of whom were young students, and/or Arabs, Southeast Asians, Muslims, and other people of color, were permitted to attend the DSCC meeting following the convention, even though they were all MDP members in good standing.

121.   To the contrary, the MDP specifically called in armed police officers to intimidate Plaintiffs and hundreds of other Arraf supporters, and to force them out of the Lansing Center.

## Violation of Michigan's Nonprofit Corporations Act

122.   MDP's refusal to release the requested voting data also constitutes a violation of Michigan's Nonprofit Corporations Act, M.C.L. § 450.2487(2), which provides that members of a nonprofit corporation may inspect a corporation's books and records upon "written demand describing with reasonable particularity the purpose of the inspection and the records the shareholder or member desires to inspect, and the records sought are directly connected with the purpose."

123.   Between August 24 and August 27, 2024, Plaintiff Arraf sent to Defendants four written requests to inspect the raw, unedited voting data and the list of properly credentialed voters, explaining that the purpose of the inspection was to

ensure the validity of the University of Michigan Regent vote results and the integrity of the elections.[2]

124.    Plaintiffs similarly sent emails to Defendant Barnes and other MDP officials requesting the same to no avail. [Exh. 16, Jessica records of requests for data; Exh. 17, Madeleine records of requests for data]

**COUNT I:**
**42 U.S.C. § 1983 -- First Amendment Violation**
**All Defendants**

125.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

126.    The First Amendment guarantees the right to free expression and association which includes the right to participate in the electoral process.

127.    Defendants MDP and Barnes, acting under color of law, conducted elections for University of Michigan Board of Regents, that were marred by errors and lack of transparency, undermining the fundamental principle of free expression and the right of Plaintiffs to participate in the political process.

---

[2] While M.C.L. § 450.2487(2) states that "member must deliver a demand under this subsection to the corporation at its registered office in this state or at its principal place of business," an email to the chairperson of the corporation satisfies this requirement under Michigan's Uniform Electronics Transactions Act, M.C.L. § 450.837(3).

128.    A number of irregularities marred the election for University of Michigan Board of Regents that took place at the MDP Nominating Convention held on August 24, 2024, including but not limited to:

a.  MDP staff making it difficult for many of Arraf's supporters to credential, wrongly telling them that they were not members, that their membership had expired, or that they were otherwise ineligible to vote.

b.  MDP staff telling Arraf supporters that they could leave the convention center and vote from home, which directly contradicts the directive in the Call to Convention for all votes to be made from the convention floor, and would have served to invalidate their votes.

c.  Missing county and district data for many voters, making it impossible for the Voatz system to tabulate the votes pursuant to the weighting formula used by the MDP.

d.  MDP staff manually manipulating data for over 2.5 hours, without allowing anyone from Arraf's campaign to be present to monitor the process.

e.  Preventing Arraf's campaign from being present to monitor the vote tabulation, but allowing other candidates, their families, and colleagues, as well as union leaders supportive of the other candidates, to be present.

f.  The inclusion of 174 more voters than those announced properly credentialed to vote at the convention.

g.  Errors in the counties listed for a number of voters, which affects the weighting of the votes.

h.  Lack of transparency in refusal to release the raw voting data from the VOATZ app as well as the list of properly credentialed voters so that an independent audit of the votes can be conducted.

129.    As a result of the aforementioned actions and omissions of Defendants MDP and Barnes, acting under color of law, Plaintiffs suffered harm, including but not limited to having their votes diluted and/or invalidated in direct violation of their First Amendment rights to participate in the political process and express their political preferences.

## COUNT II:
## 42 U.S.C. § 1983 -- Fourteenth Amendment Due Process
## All Defendants

130.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

131.    Plaintiffs have a Fourteenth Amendment Due Process right to have meaningful access to the electoral process, which not only includes the right to vote, but also have their votes counted accurately.

132.    Defendants MDP and Barnes, acting under color of law, conducted an election for University of Michigan Board of Regents that was marred by numerous irregularities, including but not limited to: (a) missing district data for many voters which prevented VOATZ from tabulating the votes electronically; (b) the subsequent manual entry of data by MDP staff for over 2.5 hours all the while denying Arraf the right to monitor or challenge the process; (c) preventing anyone from Arraf's campaign from observing the data entry and vote tabulation process, while allowing other interested parties to do so; (d) inconsistencies found in the

MDP-supplied voting data; and (e) 174 more voters than were credentialed, all constituted a violation of Plaintiffs' Fourteenth Amendment right to due process.

133.   Defendants MDP and Barnes, acting under color of law, denied Plaintiffs a procedure by which to request a recount or challenge the results of the election, preventing Plaintiffs from ensuring the accuracy and integrity of the University of Michigan Regents vote, in violation of their procedural due process rights.

134.   As a result of Defendants MDP and Barnes's failure to maintain appropriate election procedures, Plaintiffs suffered harm, including but not limited to disenfranchisement, meaningful access to the electoral process, and deprivation of their rights to have their votes counted accurately.

## COUNT III:
## 42 U.S.C. § 1983 -- Equal Protection
## All Defendants

135.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

136.   The Fourteenth Amendment Equal Protection Clause requires states to treat all citizens equally. In the context of elections, the Equal Protections Clause ensures that states administer elections in a manner that does not arbitrarily or discriminatorily disadvantage any group of voters.

137.   Defendants MDP and Barnes, at all times acting under color of law, conducted an election for University of Michigan Board of Regents in which Plaintiffs and other Arraf supporters experienced voter intimidation and voter suppression that violated their right to equal protection.

138.   In addition, irregularities in the voting process conducted by Defendants MDP and Barnes, including but not limited to the need for MDP staff to manually enter voter data without allowing anyone from Arraf's campaign to observe, the over 2.5-hour delay in reporting the results, and the lack of recount or challenge procedures disproportionately impacted Arraf's voters, many of whom were Arab, Southeast Asian, Muslims and other minorities and many who were young students, thereby violating their right to equal protection.

139.   Furthermore, the actions of Defendants Barnes and MDP staff and officers created an environment in which the other candidates were favored over Arraf, denying Plaintiff Arraf equal footing in the electoral process.

140.   The foregoing action of Defendants caused Plaintiffs to suffer harm, including but not limited to disenfranchisement, denial of meaningful access to the electoral process, deprivation of their rights to have their votes counted accurately, and the denial of equal footing in the electoral process to Plaintiff Arraf.

**COUNT IV**
**Violation of Michigan Constitution**
**All Defendants**

141.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

142.   The Michigan Constitution sets forth that the governing bodies of Michigan's three flagship universities--Wayne State University, Michigan State University, and the University of Michigan--"shall be elected as provided by law." Mich. Const., art. VIII, sec. 5.

143.   Michigan Election Law delegates the process of nominating candidates for the University of Michigan Board of Regents to the political parties. M.C.L. § 168.282.

144.   As the MDP has assumed a responsibility that generally falls within the purview of the state, its execution of that responsibility is subject to constitutional scrutiny. *Smith v Allwright* 321 US 649 (1944).

145.   Consistent with Section 597 of Michigan's Election Law, Article 6 of the MDP Bylaws identifies the DSCC as the governing body of the Michigan Democratic Party. [Exh. 5, MDP Rules, Article 6].

146.   The DSCC adopted a set of Bylaws as well as a set of the Rules for Voting and Elections (RVE) in 2018.

147.   Article 2.5 of Defendant MDP's Bylaws specifies that "no bylaw adopted by any unit of the MDP shall be valid unless publicly posted on the MDP

website." In compliance with this rule, Defendant MDP has, for six years, maintained the Bylaws and RVE on their website.

148.   The DSCC, as the governing body of the MDP, has set the rules for the party, articulated in the MDP Bylaws and other governing documents including the RVE. Neither Defendant Barnes nor Jensen nor any authority other than the DSCC have authority to make changes to party rules.

149.   When Defendants Barnes and Jensen chose to conduct the election of multiple-position offices using a method approved only for single-position offices, they violated a number of provisions of the MDP Bylaws including, but not limited to:

    a.   RVE 6.1 and 6.4 providing that elections for multi-position offices are to be conducted using the slate voting method;

    b.   RVE 1.1 providing that "[n]o other voting procedures are approved for use within the MDP" other than those outlined in the RVE;

    c.   MDP Bylaws, Articles 2.14 that prohibits any unit of the MDP from using an election procedure that was not "published" and "publicized" in advance. Articles 2.14, 3.2.1 and 3.3.1 together required the MDP to publish and publicize the "full description of the legal and practical procedures for selection" at least 30 days in advance of the vote.

150.   The Michigan Constitution and Michigan law delegate the power to nominate candidates for the University of Michigan Board of Regents to the "political party," as governed by their State Central Committees, not to the

temporary leadership of a political party. Mich. Const. art. VIII, sec. 5; M.C.L. § 168.282; M.C.L. § 168.597

151.   Defendants reported to the Secretary of State the names of Ilitch and Diggs as the duly-elected nominees of the MDP, knowing there were irregularities in the election process and errors in the data that call into question the validity of the announced results.

152.   Defendants have refused to conduct an audit of the elections and have ignored repeated requests to release the raw voting data, thereby rejecting all forms of transparency and accountability for the integrity of the nomination process.

153.   By refusing to guarantee the integrity of the election for University of Michigan Regents, Defendants have substituted their choice for the expressed will of MDP members and their right to participate in the electoral process.

154.   Defendants transformed the process of nominating University of Michigan Board of Regent candidates from one in which the political party elects its candidates to one in which the MDP leadership unilaterally chooses the candidates.

155.   By usurping the democratic will of MDP members, Defendants violated the mandate of the Michigan Constitution that the regents of the University of Michigan be "elected as provided by law." Mich. Const., art. VIII, sec. 5.

Case 1:24-cv-00933   ECF No. 1,  PageID.38   Filed 09/11/24   Page 38 of 41

156.   Further, Defendants conducted the election for University of Michigan Board of Regents in a manner that violated the constitutional rights of Plaintiffs and other Arraf supporters to fully engage in the political process.

157.   Defendants' violation of the Michigan Constitution caused Plaintiffs harm by depriving them of the rights and responsibilities guaranteed to them under the Michigan Constitution and the laws of the State of Michigan.

## COUNT V
## Breach of Contract
## All Defendants

158.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

159.   As noted above, bylaws constitute binding, contractual agreements between an organization and its members.

160.   By the conduct described herein, Defendants violated the MDP Bylaws and other governing documents.

161.   By failing to comply with the MDP Bylaws and governing documents, Defendants are in breach of contract.

162.   As a result of Defendants' breach, Plaintiffs' rights under MDP's Bylaws and other governing documents have been harmed.

## COUNT VI
## Michigan Nonprofit Corporations Act M.C.L. § 450.2487(2)

**All Defendants**

163.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

164.   M.C.L.  § 450.2487(2) guarantees the members of nonprofit corporations the right to inspect certain records of the corporation upon reasonable request made in writing and delivered to the corporation's principal place of business.

165.   Since August 24, 2024, Plaintiffs have made numerous requests, in writing, sent via email to Defendants Barnes, Jensen, and other MDP officials, to no avail.[3]

166.   Defendants' failure to comply with Michigan's Nonprofit Corporations Act has harmed Plaintiffs by depriving them of records to which they are entitled, necessitating the expenditure of significant resources to file this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

1.      Issue a preliminary injunction compelling Defendants to immediately release to Plaintiffs (i) all raw voting data from the VOATZ application; and (ii) a

---

[3] *See* FN 2, *supra.*

list of the 1248 MDP members properly credentialed to vote by 2:00 p.m. on Saturday, August 24, 2024;

2.      Order Defendants to cooperate with Plaintiffs to audit the data produced pursuant to #1 above and, if such audit reveals that Plaintiff Arraf is a rightful winner of one of the two University of Michigan Regent nomination, to communicate such to the Secretary of State pursuant to M.C.L. § 168.285, so that Arraf replaces the nominee no longer qualified to be on the general election ballot by means of not having secured the required votes.

3.      Declare that the MDP's election and vote-counting process and its refusal to release the raw, unedited voting data, was flawed, lacked transparency, and failed to comply with the federal and state constitutions and the laws of the State of Michigan, thereby violating the constitutional rights of Plaintiffs and all others similarly situated;

4.      Order Defendants to implement corrective measures, including the creation of a process to request a recount or otherwise challenge the results of an election, in order to ensure fair and transparent electoral processes that comply with the federal and state constitutions and the laws of the State of Michigan in conducting and certifying election results;

5.      Declare that the MDP's process for nominating the party's candidates for the University of Michigan's Board of Regents violated the MDP's Bylaws and

other governing documents, including the Rules for Voting and Elections, in breach of Defendants' contract with Plaintiffs and all other MDP members;

6.      Order Defendants to comply with MDP Bylaws and other governing documents in their conduct of future MDP business including elections;

7.      Award Plaintiffs all reasonable attorney's fees and costs as permitted by law, including 42 U.S.C. § 1988.

8.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Huwaida Arraf*_____
Huwaida Arraf (NY 4707220)
45836 Eden Drive
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com
*Attorney for Plaintiff*

Dated: September 11, 2024