UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all
similarly situated,

   Plaintiffs,      Case No.: 24-cv-00933
             Hon. Jane M. Beckering

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, in her official
capacity as Chair of the Michigan
Democratic Party, CHRISTINE
JENSEN, in her official capacity as
Executive Director of the Michigan
Democratic Party,

   Defendants.

---

## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com
*Attorney for Plaintiffs*

## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE

Plaintiffs HUWAIDA ARRAF, JENNIFER KIRBY, and MADELEINE TOCCO, as individuals and on behalf of all those similarly situated, by and through their attorneys, respectfully move this Court for a preliminary injunction and Order to Show Cause against Defendants MICHIGAN DEMOCRATIC PARTY, LAVORA BARNES, in her official capacity as Chairperson of the Michigan Democratic Party, and CHRISTINE JENSEN, in her official capacity as the Executive Director of the Michigan Democratic Party. In support thereof, Plaintiffs state the following:

1.      On September 11, 2024, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against Defendants alleging serious violations of their constitutional rights, as well as their rights under the Michigan Constitution, common law and the laws of the State of Michigan. [ECF 1, Complaint]

2.      Defendant Michigan Democratic Party ("MDP") is a political party, incorporated as a nonprofit corporation in the State of Michigan and having its principal office located in the City of Lansing, County of Ingham. The MDP is governed by the Democratic State Central Committee ("DSCC") which oversees elections for the MDP's nominees to certain statewide offices, including the election for the University of Michigan Board of Regents.

3.      Defendant Lavora Barnes, at all relevant times, was the Chairperson of the MDP, tasked with carrying out the programs and policies of the MDP State Conventions and the DSCC.

4.      Defendant Christine Jensen, at all relevant times, was the Executive Director of the MDP, tasked with supporting the MDP chairperson in carrying out the programs and policies of the MDP State Conventions and the DSCC.

5.      Plaintiffs Huwaida Arraf, Madeleine Tocco, and Jennifer Kirby are duly registered voters in the State of Michigan and members in good standing of the Michigan Democratic Party ("MDP"), who were entitled to vote and did cast a vote at the MDP's August 24, 2024, State Convention.  Plaintiffs file this suit as individuals and on behalf of all other similarly situated MDP members who attended and voted at the August 24, 2024 Convention. Additionally, Plaintiff Arraf was a candidate for the Democratic party nomination for the University of Michigan Board of Regents.

6.      Pursuant to MCL § 168.282, in every even-numbered year, at their fall state conventions, each political party may nominate two candidates for the governing boards of Michigan's three flagship universities – University of Michigan, Michigan State University, and Wayne State University.

7.      On August 24, 2024, pursuant to M.C.L. § 168.282, Defendant MDP held its fall State Nominating Convention at the Lansing Center, in the City of

Lansing, County of Ingham, to among other things, elect two (2) nominees each for the State Supreme Court, the State Board of Education and the governing boards of Wayne State University, Michigan State University, and the University of Michigan.

8.      At said Convention, Plaintiff Arraf was one of three candidates running for two available seats on the University of Michigan's Board of Regents.

9.      Within the MDP, nominations for these seats are largely uncontested, with party insiders generally running unopposed.

10.     Indeed, none of the ten (10) seats in the five races were contested until three weeks before the Convention when Plaintiff Arraf entered the race for the University of Michigan Board of Regents.

11.     The nomination for two University of Michigan Regents was the only contested election of the Convention, having three candidates--Denise Ilitch (an incumbent), Shauna Ryder Diggs (a member of the Democratic National Committee and former regent of the University of Michigan), and Plaintiff Huwaida Arraf--for two positions.

12.     In the lead-up to the Convention, at the Convention and following therefrom, Defendants engaged in voter intimidation, voter suppression, vote tampering and numerous violations of the MDP's own bylaws in order to ensure the victory of the party leadership's preferred candidates, Ilitch and Diggs. [ECF 1, PageID. 7-8, 27, 29, 31-35]

13.    Candidates Ilitch and Diggs were presented for consideration as slate, widely advertised as the "Unity Slate." [ECF 1-19, Exh. 18, Unity Slate]

14.    On August 24, 2024, at the MDP's State Nominating Convention, Plaintiffs and others similarly situated MDP members, attempted to exercise their right to vote in the election to nominate two candidates for the University of Michigan Board of Regents.

15.    However, as set forth more fully in Plaintiffs' verified complaint, Defendants violated the constitutional and statutory rights of Plaintiffs and hundreds of other similarly situated MDP members to participate in the political process by engaging in the following nonexhaustive list of harmful conduct:

> a.  Voter intimidation and harassment of Plaintiff Arraf's supporters, the majority of whom were clearly identifiable by their bright maize and blue "Huwaida for Regent" t-shirts;
>
> b.  Racial profiling and arranging for an increase in police presence targeting voters who appeared Middle Eastern or Muslim by virtue of their religious headscarves or physical appearance;
>
> c.  MDP staff falsely told Arraf supporters seeking credentials that they were not in the system, that their memberships had expired, or that they otherwise did not have voting privileges;
>
> d.  MDP staff gave Arraf supporters incorrect information, including that they "could leave and vote from home," even though the MDP Call to Convention explicitly states that votes had to be cast in person from the convention floor; [ECF 1-2, Exh. 1, MDP Call to Convention, p. 10]
>
> e.  The MDP lost or was missing data that was necessary for accurate electronic tallying of the vote count pursuant to the weighted formula used by the MDP;

   f.  MDP staff manually entered data, without oversight or checks by Plaintiff Arraf or any member of her campaign;

   g.  The MDP excluded Arraf's campaign, including Plaintiff Arraf herself, from the vote tabulation area to observe the manual entry of data and the vote tabulation. The MDP allowed supporters of the other candidates and at least one of the other candidates herself into the area to monitor the manual entry of data and vote tabulation;

   h.  The MDP called the vote closed at 4:39 p.m. but failed to announce results until approximately 7:10 p.m.—more than 2.5 hours after allegedly closing the vote, without ever explaining to Plaintiffs the reason for the delay.

   i.  Defendant Lavora Barnes refused to turn over the raw data requested by Plaintiffs, to explain why neither Arraf nor any of her campaign staff were allowed to observe the vote tabulation, or to inform Arraf what modifications had been made to the votes made electronically by voters;

   j.  The MDP offered no process by which Plaintiffs or other MDP members could challenge or request an audit of the election.

16.   Defendants also violated the MDP's Bylaws, Rules for Voting and Elections, and other governing documents, by *inter alia* allowing non credentialed persons to vote; improperly ratifying the nomination of Diggs and Ilitch (the "Unity Slate") for University of Michigan Board of Regents without a quorum; refusing all calls for transparency, and improperly tabulating the votes of the University of Michigan Regent nomination race, where had the correct method been used—the slate voting method—Plaintiff Arraf would have received one of the nominations. [ECF 1, Complaint, *passim*]

6

17.   Moreover, Defendants were made aware of the voting irregularities and the errors in the voting data, including the discovery of 174 more voters than were properly credentialed to vote, and ignored these serious issues in order to ensure the nomination of their preferred candidates—Diggs and Ilitch. [ECF 1, Complaint, PageID 15, ¶¶54-56; ECF 1-8, Arraf email to Defs reporting errors in data]

18.   Plaintiff Arraf repeatedly communicated to Defendants that she contested the results of the election and wanted to challenge them. [*Id.*, PageID. 12-14, 23, 26; ¶¶42-43, 46, 95, 106-07]

19.   Defendant Barnes informed Arraf that the MDP did not have a procedure for auditing a vote or conducting a recount and that Arraf's only recourse was to file a petition with the MDP Appeals Committee if she felt she had been aggrieved. However, pursuant to Rule 12 of its bylaws, the MDP Appeals Committee has between 30 and 45 days to issue a resolution to a complaint, making it a wholly ineffective remedy for addressing Plaintiffs' concerns about the integrity of the University of Michigan Board of Regents nomination process and the validity of the announced results before the statewide ballot submission deadline. [*Id.*,

PageID. 13, ¶47; ECF 1-5, Barnes email to Arraf 8-25-24]

20.   Nevertheless, on Wednesday, August 28, 2024, Arraf filed a petition with the MDP Appeals Committee, detailing many of the aforementioned

irregularities and requesting the release of the raw, unedited voting data. Due to the short timeframe before names have to be finalized for the November general election ballot, Plaintiff Arraf requested expedited review of her petition, which Defendant Barnes denied. [*Id.*, PageID. 14, ¶49; ECF 1-12, Exh 11, Appeal; ECF 1-13, Exh 12, Arraf request to expedite; ECF 1-14, Exh 13, Barnes acknowledgment]

21.    Plaintiffs earnestly tried to resolve this matter quietly and internally by requesting transparency from Defendants to no avail. Defendants completely stonewalled Plaintiffs. Plaintiffs and hundreds of similarly situated MDP members and members of the broader Michigan electorate then sent letters to Defendants. Again, to no avail.

22.    Finally, on September 5, 2024, Plaintiffs filed a complaint for declaratory and injunctive relief in the Ingham County Circuit Court against Defendants MDP and Barnes, with the Secretary of State Jocelyn Benson added for the limited purpose of obtaining a temporary restraining order to delay the finalization of the names for the November general ballot until an audit of the August 24, 2024 vote could be conducted. [Exh. 1, Ingham Circuit Ct. Complaint]

23.    Plaintiffs' suit in the Ingham County Circuit Court did not allege all of the constitutional violations alleged in the instant case, but instead focused only on Defendants' numerous violations of the MDP Bylaws, constituting a breach of

contract, and their violation of the Michigan Nonprofit Corporations Act, MCL §450.2487(2). [*Id*]

24.    Plaintiffs sought an emergency temporary restraining order or preliminary injunction compelling Defendants MDP and Barnes to review the election for University of Michigan Board of Regents in conformity with the MDP Bylaws, which Plaintiffs maintain would result in Plaintiff Arraf winning one of the two nominations.  Plaintiffs also sought an emergency temporary restraining order or preliminary injunction enjoining the Secretary of State from finalizing the names for the November ballot until Defendants retabulated the votes properly. [Exh. 2, Emergency Ex-parte Motion for TRO]

25.    On September 6, 2024, Defendants MDP and Barnes filed a Response in Opposition, arguing that Defendants MDP and Barnes did not violate the MDP Bylaws because slate voting was not intended to be used at nominating conventions; and that, in any event, the case constituted a nonjusticiable political question involving the internal affairs of a political party. [Exh. 3, Defs Response in Opp].

26.    The circuit court denied Plaintiffs' requests for temporary restraining orders or preliminary injunctions on two bases: (1) that the circuit court did not have jurisdiction over the Secretary of State and, therefore, could not prevent the irreparable harm alleged; and (2) that Plaintiffs did not have a high likelihood of success on the merits because their claims involved a nonjusticiable intraparty

dispute pursuant to *Am Indep Party of Mich (Morse-Smith Faction) v Sec'y of State*, 397 Mich 689 (1976). [Exh. 4, Hearing transcript excerpt]

27.     Plaintiffs filed an emergency motion for leave to file an interlocutory appeal, which the Michigan Court of Appeals denied. [Exh. 5, COA order denying leave]

28.     Plaintiffs now come before this Honorable Court seeking relief for violations of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs seek a preliminary injunction to compel Defendants herein to produce the raw data necessary to audit the election in time to ensure that the rightful nominees advance to the general election.

29.     Although September 6, 2024 was the deadline for the Secretary of State to finalize the names for the November ballot, the ballots have not yet been printed as this is a period of time for making corrections to the ballot. *See* M.C.L. § 168.565 and 168.690.

30.     M.C.L § 168.285 provides the mechanism by which a candidate of a political party for the University of Michigan Board of Regents can be replaced if necessary. The statute states:

> Whenever a candidate of a political party, after having been nominated to membership on the state board of education, the board of regents of the University of Michigan, the board of trustees of Michigan State University, or the board of governors of Wayne State University, shall die, withdraw, remove from the state, or become disqualified for any reason, the state central

committee of said party shall meet forthwith and, by a majority vote of the members thereof, shall select a candidate to fill the vacancy thereby caused. The name of the candidate so selected shall be immediately certified by the chairman and the secretary of said committee to the secretary of state and to the board of election commissioners for each county, whose duty it is to prepare the official ballots, and said board shall cause to be printed or placed upon said ballots, in the proper place, the name of the candidate so selected to fill the vacancy.

31.     There remains a small window of time to ensure that the candidates who legitimately won the nomination for University of Michigan Board of Regents appear on the November general election ballot.

32.     Failure to grant immediate injunctive relief in this matter will cause irreparable harm to Plaintiffs and all others similarly situated, as once the general election ballots are printed, there will be no way to rectify the violations to Plaintiffs' constitutional rights. It will also raise serious and credible concerns of election fraud leading to the November election, thereby undermining voter confidence in the process, voter participation in the election, and public confidence in election results in general.

33.     Injunctive relief is necessary to remedy the serious violations to Plaintiffs' constitutional rights, to protect the integrity of the election, and to ensure that the properly nominated candidates appear on the November ballot.

34.     As set forth herein, and more fully in Plaintiffs' Complaint for Declaratory and Injunctive Relief [ECF 1] Defendants have been on notice since August 24, 2024 that Plaintiffs seek the relief sought herein.

35.     In addition to the numerous efforts that Plaintiffs have undertaken to urge and compel Defendants to be transparent, on the morning of September 11, 2024, counsel for Plaintiffs wrote to defense counsel, offering to voluntarily dismiss the circuit court action in exchange for Defendants immediately producing the raw voting data Plaintiffs have been requesting--data that Plaintiffs would be entitled to obtain through discovery anyway.[Exh. 6, Akeel email offering exchange 9-11-24]

36.     At the time of this filing, defense counsel has not yet responded.

37.     Also, at 8:26 a.m. this morning, the undersigned emailed to Defendants a subpoena, requesting production of the raw voting data sought herein, as well as a copy of Plaintiffs' Complaint for Declaratory and Injunctive Relief, informing Defendants that in-person service of the subpoena would be effected today, requesting a waiver of service of the summonses and complaint, and alerting them to the instant motion would be filed this morning. [Exh. 7, Email notice to Defendants, 9-12-24]

38.     Pursuant to Defendants' request, the undersigned forwarded the above email with attached documents to defense counsel, Scott Eldridge, followed by a copy of the instant motion and related exhibits. [Exh. 8, Emails to Eldridge]

WHEREFORE, Plaintiffs respectfully request this Court issue a preliminary injunction, compelling Defendants to:

1.  Tabulate the election votes in accordance with the MDP Rules on Voting and Elections, using the slate tabulation method to determine

the proper winners of the University of Michigan Board of Regents nomination; and

2.   Immediately communicate the results of the retabulation to the Secretary of State pursuant to M.C.L. § 168.285;

3.   Alternatively, immediately produce to Plaintiffs, for the purpose of an audit, the following:

a.   the raw voting data from the VOATZ system that was turned over to Defendants by VOATZ staff immediately after voting for the University of Michigan Board of Regents closed on August 24, 2024; and

b.   a list of the MDP members properly credentialed to vote as of 2:00 p.m. on Saturday, August 24, 2024, and

4.   Order Defendants to cooperate with Plaintiffs to audit the data produced pursuant to 3(a) and (b) above and, if such audit reveals that Plaintiff Arraf is a rightful winner of one of the two University of Michigan Regent nominations,

5.   Immediately communicate the results of the audit to the Secretary of State pursuant to M.C.L. § 168.285 so that Arraf replaces the nominee no longer qualified to be on the general election ballot by means of not having secured the required votes.

Plaintiffs further request that this Honorable Court grant any and all other injunctive or equitable relief this Court deems just and proper.

Respectfully submitted,

s/ Huwaida Arraf
Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com
Attorney for Plaintiff

Dated:  September 12, 2024

13

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all
similarly situated,

        Plaintiffs,                    Case No.: 24-cv-00933

                                      Hon. _____

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, in her official
capacity as Chair of the Michigan
Democratic Party, CHRISTINE
JENSEN, in her official capacity as
Executive Director of the Michigan
Democratic Party,

        Defendants.

---

**BRIEF IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com
*Attorney for Plaintiff*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................... iii

INTRODUCTION ..........................................................................................1

STATEMENT OF FACTS ...............................................................................1

LEGAL AUTHORITY ....................................................................................1

ARGUMENT ................................................................................................2

    I.    Plaintiffs are Likely to Succeed on the Merits Because Substantial and Irrefutable Evidence Indicate that Vote Results are Not Valid ........................................................2

    II.   Plaintiffs will be Irreparably Harmed if the Requested Relief is not Granted ...............................................................4

    III.  The Balance of Equities and Public Interest Weigh in Plaintiffs' Favor ..................................................................7

    IV.  Public Interest Strongly Favors Issuance of Preliminary Injunction ....................................................................8

REQUEST FOR RELIEF .................................................................................8

CERTIFICATE OF SERVICE ..........................................................................9

# INDEX OF AUTHORITIES

## Federal Cases

*ACLU of Ky. v. McCreary County, Ky.,* 354 F.3d 438 (6th Cir. 2003)...........6

*Banchy v. Repub. Party of Hamilton Cty.,*
    898 F.2d 1192 (6th Cir. 1990)....................................................3

*Bush v. Gore,* 531 U.S. 98 (2000) .............................................. 4-6

*City of Dearborn v. Comcast of Mich.,*
    558 F. Supp. 2d 750 (E.D. Mich. 2008) ...................................2

*Dunn v. Blumstein,* 405 U.S. 330 (1972)......................................... 4

*In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985) ...........................2

*Harper v. Va. State Bd. of Elections,* 383 U.S. 663 (1966)............................4

*Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996)....................... 2

*Obama for Am. v. Husted,* 697 F.3d 423 (6th Cir. 2012) ............................. 6

*Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008)..................2

*Smith v. Allwright,* 321 U.S. 649, 664 (1944) ........................................ 2-3

*Thermatool Corp v Borzym*, 227 Mich App 366 (1998) ...............................5

*Williams v. Salerno,* 792 F.2d 323 (2d Cir.1986) .........................................6

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................2

*Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886)................................4

## Federal Rules

Fed.R.Civ.P. 65 ......................................................................1

## State Statutes

M.C.L. § 168.282 .............................................................. 2-3,9

## INTRODUCTION

Plaintiffs filed a Complaint seeking declaratory and injunctive relief against Defendants Michigan Democratic Party (MDP), MDP Chair Lavora Barnes, and MDP Executive Director, Christine Jensen, alleging unlawful conduct in relation to the MDP's August 2024 State Nominating Convention and the nomination for the University of Michigan Board of Regents. The actions of Defendants violated Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, as well as their rights under common law and the constitution and laws of the State of Michigan. Plaintiffs now seek immediate relief to protect Plaintiffs' constitutional rights, ensure the integrity of the election, and determine the rightful nominees for the University of Michigan Board of Regents before ballots are printed for the general election.

## STATEMENT OF FACTS

Plaintiffs rely on the facts set forth in the accompanying motion as well as Plaintiffs' verified complaint, filed simultaneously with this emergency motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions and temporary restraining orders. Fed.R.Civ.P. 65.

Plaintiffs seeking a preliminary injunction must establish: (1) that they are likely to succeed on the merits of their claims; (2) that plaintiffs are likely to suffer

1

irreparable harm in the absence of relief; (3) that the balance of equities weighs in their favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).  A court must balance each of the four factors and "no single factor is dispositive." *City of Dearborn v. Comcast of Mich.*, 558 F. Supp. 2d 750, 754 (E.D. Mich. 2008). Where, as here, plaintiffs demonstrate "irreparable harm which decidedly outweighs any potential harm to the defendant," the "degree of likelihood of success required" is less, and a plaintiff need only show "serious questions going to the merits." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

## ARGUMENT

### I.  Plaintiffs are Likely to Succeed on the Merits Because Substantial and Irrefutable Evidence Indicate that Vote Results are Not Valid.

Michigan, by statute, assigns to political parties, the right to choose its nominees for a number of state-wide offices including, as is relevant here, the University of Michigan's Board of Regents. M.C.L. § 168.282.  It is well-settled that where political parties assume a traditional governmental function, such as conducting an integral part of the election process, the party becomes a state actor for that limited purpose and its conduct is subject to the safeguards of the U.S. Constitution. *See Smith v. Allwright,* 321 U.S. 649, 664 (1944); *Morse v. Republican Party of Virginia*, 517 U.S. 186, 198 (1996) (If a party chooses to avail itself of the

2

delegated power over the electoral process, it necessarily becomes subject to constitutional regulation); *Banchy v. Repub. Party of Hamilton Cty.*, 898 F.2d 1192, 1196 (6th Cir. 1990) (a private club was a state actor insofar as it had been assigned an integral part in the election process by the state). Thus, even though Defendant MDP is a private, nongovernmental organization, its fall nominating conventions, proscribed by statute—M.C.L. § 168.282—and its elections to select the party's nominees for certain statewide offices, are conducted under color of state law. *See Smith*, 321 U.S. at 664.

In their Complaint for Declaratory and Injunctive Relief, Plaintiffs allege numerous violations of their constitutional rights, and specifically of their rights under the First and Fourteenth Amendments to meaningfully participate in the political process and to equal protection of the law.

Plaintiffs have a strong likelihood of success on the merits based on the substantial evidence that the election process was constitutionally flawed and the results announced by the MDP invalid. Plaintiffs allege numerous irregularities in the election process that call into question the fairness and integrity of the election for the University of Michigan Board of Regents conducted by Defendants. The Michigan Democratic Party's refusal to allow Plaintiff Arraf's campaign representatives to observe the manual manipulation of votes, allegations of voter intimidation and voter suppression, evidence of votes that were not counted, the

unexplained existence of 174 extra voters than were properly credentialed to vote at the Convention, and Defendants' refusal to be transparent all suggest that the election process was flawed, the results are unreliable, and that Defendants violated the constitutional rights of Plaintiffs and others similarly situated to meaningfully participate in the process of nominating the party's candidates for the University of Michigan's Board of Regents.

## II.   <u>Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction.</u>

The right to vote is a fundamental right, "preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886); *Harper v. Va. State Bd. of Elections,* 383 U.S. 663, 670 (1966). The right to vote includes the right to have one's vote counted on equal terms with others. *Bush v. Gore,* 531 U.S. 98, 104 (2000); *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.").

The Supreme Court explained:

The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. It must be remembered that the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.

4

*Bush*, 531 U.S. at 104-105 (internal citations and quotations omitted).

Plaintiffs have alleged egregious conduct by Defendants that not only disenfranchised them and other similarly situated Arraf supporters, but also diluted the weight of their votes. Indeed, the voter data that Defendant Barnes provided to Plaintiff Arraf, among other things, showed missing or incorrect information for approximately two dozen voters, most of them who had voted for Arraf and whose votes were not counted. The data also revealed 1422 unique voter identifications, indicating that 1422 people voted, even though the official number of credentialed voters announced at the Convention was 1248. This difference of 174 extra voters served to dilute the votes of Plaintiffs and other MDP members who were properly credentialed to vote. These errors alone call into question the validity of the results announced by the MDP. Plaintiffs' repeated attempts to raise these serious election discrepancies to Defendants were shockingly ignored, necessitating legal action.

Plaintiffs will suffer irreparable injury if injunctive relief is not granted, as Plaintiffs will be unable to remedy Defendants' violations of their rights to meaningfully participate in the electoral process and have their votes count before the printing of the general election ballot. "In order to establish irreparable injury, the moving party must demonstrate a non-compensable injury for which there is no legal measurement of damages or for which damages cannot be determined with sufficient degree of certainty." *Thermatool Corp v Borzym*, 227 Mich App 366, 377

(1998).  When constitutional rights are threatened or impaired, irreparable injury is presumed. *See ACLU of Ky. v. McCreary County, Ky.,* 354 F.3d 438, 445 (6th Cir. 2003).   "A restriction on the fundamental right to vote therefore constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *Williams v. Salerno,* 792 F.2d 323, 326 (2d Cir.1986)).

In their complaint, Plaintiffs allege that Defendants submitted to the Secretary of State the names of Ilitch and Diggs as the duly-nominated candidates of the Michigan Democratic Party despite knowledge that the voting data used to tabulate the results is deeply flawed. Defendants have inexplicably ignored repeated calls to address the matter in order to ensure the integrity of the voting process and the validity of the results.

Should the printing of the general election ballots go forward with Ilitch and Diggs listed as the Democratic candidates, it will be based on a deeply flawed election process and irrefutably error-ridden data. Plaintiff Arraf will suffer the irreparable injury of wrongfully being omitted from the general election ballot, and Plaintiffs Kirby and Tocco as well as all other similarly situated Arraf supporters will be denied their right to have their votes counted. *Bush,* at 104. This restriction on the fundamental right to vote is a non-compensable injury that no measure of damages can satisfy. *Obama for Am.*, at 436.

6

Furthermore, Defendants' wrongful conduct of disenfranchising Plaintiffs and other Arraf supporters will be rewarded and affirmed.  The certification of flawed election results would undermine the integrity of the democratic process, potentially further disenfranchising voters and damaging the reputation of the electoral system. It will also negatively impact general voter confidence in the election process and the legitimacy of the November election. The harm caused by certifying a flawed election cannot be undone once the results are finalized, making immediate relief essential.

### III.   **Balance of Equities Favors Plaintiffs.**

The balance of equities favors Plaintiffs. Defendants' interest in certifying the results of the University of Michigan Board of Regents nomination without proper scrutiny does not outweigh the Plaintiffs' and the public's interest in ensuring that the election process was fair, transparent, and compliant with federal and state laws. The inconvenience to Defendants of producing the raw data that Plaintiffs request is minimal compared to the potential harm to Plaintiffs and the electorate if the election is certified under a cloud of irregularity. Indeed, the data Plaintiffs seek is already compiled, available, and stored in easily transferrable electronic files that can be emailed to Plaintiffs in minutes.  As such, the practical inconvenience to Defendants is minimal. Defendants may not want to contend with the fact that the data they used to tabulate the results of the regent vote is flawed or with the likelihood that the

candidates they submitted to the Secretary of State are not the rightfully elected nominees. Neither of these is a legitimate reason for opposing the production of the data that Plaintiffs seek in this request for injunctive relief.

## IV.    **Public Interest Strongly Favors Issuance of a Preliminary Injunction.**

The public interest strongly favors the issuance of a preliminary injunction to maintain the integrity of the election process. Ensuring that elections are conducted in a transparent and lawful manner is fundamental to the functioning of democracy. The public has a vested interest in the accuracy and fairness of election results, and any doubts about the legitimacy of the process must be addressed before certification.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court Grant their Emergency Motion for a Preliminary Injunction, compelling Defendants to

1. Tabulate the election votes in accordance with the MDP Rules on Voting and Elections, using the slate tabulation method to determine the proper winners of the University of Michigan Board of Regents nomination; and

2. Immediately communicate the results of the retabulation to the Secretary of State pursuant to M.C.L. § 168.285;

3. Alternatively, immediately produce to Plaintiffs, for the purpose of an audit, the following:

     a. the raw voting data from the VOATZ system that was turned over to Defendants by VOATZ staff immediately after voting for the University of Michigan Board of Regents closed on August 24, 2024; and

     b. a list of the MDP members properly credentialed to vote as of 2:00 p.m. on Saturday, August 24, 2024 and

4. Order Defendants to cooperate with Plaintiffs to audit the data produced pursuant to 3(a) and (b) above and, if such audit reveals that Plaintiff Arraf is a rightful winner of one of the two University of Michigan Regent nominations,

5. Immediately communicate the results of the audit to the Secretary of State pursuant to M.C.L. § 168.285 so that Arraf replaces the nominee no longer qualified to be on the general election ballot by means of not having secured the required votes.

Plaintiffs further request that this Honorable Court grant any and all other injunctive or equitable relief this Court deems just and proper.

Respectfully submitted,

s/ *Huwaida Arraf*
Huwaida Arraf (NY 4707220)
45836 Eden Drive
Macomb, MI 48044
T: 917.588.3482
E: huwaida.arraf@gmail.com

Dated: September 12, 2024

CERTIFICATE OF SERVICE

I affirm that this Emergency Motion for Preliminary Injunction and Brief in Support will be served concurrently with, and in the same manner as, the service of the Summons and Complaint in this matter.

/s/*Huwaida Arraf*
Huwaida Arraf
*Attorney for Plaintiffs*

Dated: September 12, 2024