# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all similarly
situated,

      Plaintiffs,

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, Chair of the
Michigan Democratic Party, and CHRISTINE
JENSEN, in her official capacity as executive
director of the Michigan Democratic Party,

      Defendants.

Case No. 1:24-cv-933

Hon. Jane M. Beckering

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 480444
(917) 588-3482
Huwaida.arraf@gmail.com
*Attorney for Plaintiffs*

Scott R. Eldridge (P66452)
Erika L. Giroux (P81998)
MILLER, CANFIELD, PADDOCK, AND STONE, PLC
120 N. Washington Square, Suite 900
Lansing, MI  48933
(517) 487-2070
eldridge@millercanfield.com
giroux@millercanfield.com
*Attorneys for Defendants*

---

## DEFENDANTS MICHIGAN DEMOCRATIC PARTY, LAVORA BARNES, AND CHRISTINE JENSEN'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

      A.     The MDP Conducts Voting for Two Nominations for Regents of the University of Michigan During the August 24, 2024 Nominating Convention........................................................................................... 3

      B.     Plaintiffs Lose Their Preliminary Injunction Request in Ingham County Circuit Court and Then File This Lawsuit, Seeking the Same Relief.................. 5

STANDARD OF REVIEW ............................................................................................ 7

ARGUMENT ................................................................................................................. 8

I.      PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ........................................................................................... 8

      A.     Plaintiffs' Claims Are Barred by Laches ........................................... 8

      B.     Plaintiffs' Claims for Relief Are Moot ............................................ 12

      C.     Plaintiffs' Claims Present a Nonjusticiable Intraparty Dispute ........................... 14

      D.     Plaintiffs Have Failed to State a Plausible Claim for Relief............................... 15

            1.     Defendants did not act under color of state law, and Plaintiffs' Section 1983 claims fail on their face.................................... 15

            2.     Plaintiffs have not alleged a plausible breach of the Bylaws.................. 18

            3.     Plaintiffs have not alleged a cognizable breach of the Michigan Constitution........................................................................... 20

            4.     The MDP is not subject to Michigan's Nonprofit Corporation Act ........ 21

II.     PLAINTIFFS' REQUESTED INJUNCTION WOULD CAUSE SEVERE HARM TO THE MDP AND MICHIGAN ELECTION OFFICIALS ......................................... 21

III.    THE PUBLIC INTEREST FAVORS DENIAL OF PLAINTIFFS' REQUESTED INJUNCTION................................................................................ 23

CONCLUSION............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Democratic City Comm.*,
  288 F. Supp. 3d 597 (E.D. Pa. 2018) .......................................................................17

*Am. Indep. Party v. Austin*,
  420 F. Supp. 670 (E.D. Mich. 1976)........................................................................14

*Am. Indep. Party of Mich. (Morse-Smith Faction) v. Sec'y of State*,
  247 N.W.2d 17 (Mich. 1976).......................................................................2, 14, 15

*Banchy v. Republican Party of Hamilton Cty.*,
  898 F.2d 1192 (6th Cir. 1990) ...........................................................................16, 17

*Bennink v. City of Coopersville*,
  No. 5:06-CV-82, 2006 WL 1547279 (W.D. Mich. June 5, 2006).........................23

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) ...................................................................................8

*Crookston v. Johnson*,
  841 F.3d 396 (6th Cir. 2016) ...........................................................................10, 22

*Davis v. Sec'y of State*,
  --- N.W.3d ----, 2023 WL 3027517 (Mich. Ct. App. Apr. 20, 2023) ...............10, 12

*Detroit Unity Fund v. Whitmer*,
  819 F. App'x 421 (6th Cir. 2020) ...........................................................................11

*Detroit Unity Fund v. Whitmer*,
  No. 20-12016, 2020 WL 6580458 (E.D. Mich. Aug. 17, 2020)...............................12

*Federspiel v. Ohio Republican Party State Cent. Comm.*,
  867 F. Supp. 617 (S.D. Ohio 1994) .......................................................................17

*Gelineau v. Johnson*,
  896 F. Supp. 2d 680 (W.D. Mich. 2012) ...............................................................12

*Gelineau v. Johnson*,
  904 F. Supp. 2d 742 (W.D. Mich. 2012) ...............................................................11

*Gonzales v. Nat'l Bd. of Med. Examiners*,
  225 F.3d 620 (6th Cir. 2000) ...................................................................................7

*Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*,
   87 F.4th 743 (6th Cir. 2023) ...............................................................................15

*Kennedy v. Benson*,
   --- F. Supp. 3d ----, 2024 WL 4231578 (E.D. Mich. Sept. 18, 2024) ....................11

*Kennedy v. Sec'y of State*,
   --- N.W.3d ----, 2024 WL 4125710 (2024)...........................................................11

*King v. Whitmer*,
   505 F. Supp. 3d 720 (E.D. Mich. 2020)........................................................8, 12, 13

*Lansing v. City of Memphis*,
   202 F.3d 821 (6th Cir. 2000) ...............................................................................16

*Leary v. Daeschner*,
   228 F.3d 729 (6th Cir. 2000) .................................................................................8

*Libertarian Party of Ohio v. Blackwell*,
   462 F.3d 579 (6th Cir. 2006) ...............................................................................13

*Libertarian Party of Ohio v. Husted*,
   831 F.3d 382 (6th Cir. 2016) ...............................................................................17

*Livonia Prop. Holdings v. 12840-12976 Farmington Rd. Holdings*,
   717 F. Supp. 2d 724 (E.D. Mich. 2010), *aff'd*, 399 F. App'x 97 (6th Cir. 2010).....................7

*Memphis A. Philip Randolph Inst. v. Hargett*,
   2 F.4th 548 (6th Cir. 2021) ...........................................................................12, 13

*Michigan Chamber of Com. v. Land*,
   725 F. Supp. 2d 665 (W.D. Mich. 2010) .................................................................8

*Morse v. Republican Party of Virginia*,
   517 U.S. 186 (1996)...........................................................................................16

*New Democratic Coal. v. Austin*,
   200 N.W.2d 749 (Mich. Ct. App. 1972) ...............................................................22

*Nykoriak v. Napoleon*,
   964 N.W.2d 895 (Mich. Ct. App. 2020) ...............................................................11

*O'Brien v. Brown*,
   409 U.S. 1 (1972)...............................................................................................14

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006).........................................................................................10, 11

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
 134 F.3d 749 (6th Cir. 1998) ...............................................................7

*Smith v. Allwright*,
 321 U.S. 649 (1944) ...............................................................16, 17

*United States v. City of Loveland, Ohio*,
 621 F.3d 465 (6th Cir. 2010) ...............................................................8

*West v. Atkins*,
 487 U.S. 42 (1988) ...............................................................15

## Constitutions

Mich. Const. Art. II § 4(1)(b) ...............................................................9, 13

Mich. Const. Art. II § 4(1)(h) ...............................................................1, 10, 13

Mich. Const. Art. VIII § 5...............................................................20, 21

## Statutes

42 U.S.C. § 1983 ............................................................... *passim*

Mich. Comp. Laws § 168.283...............................................................4, 23

Mich. Comp. Laws § 168.648...............................................................9, 13

Mich. Comp. Laws § 168.710...............................................................9, 13

Mich. Comp. Laws § 168.711...............................................................9, 13

Mich. Comp. Laws § 168.713...............................................................9, 13

Mich. Comp. Laws § 168.759a(5)...............................................................9, 13

Mich. Comp. Laws § 169.211(6)...............................................................21

Mich. Comp. Laws § 450.2487...............................................................21

## Other Authorities

8A Mich. Civ. Jur. Elections § 20...............................................................14

## <u>INTRODUCTION</u>

This is Plaintiffs' *second* lawsuit attempting to invalidate the results of the vote taken at the Michigan Democratic Party ("MDP")'s August 24, 2024 convention for the MDP's two nominations for Regents of the University of Michigan and to place their preferred candidate on the ballot.  The Ingham County Circuit Court already denied Plaintiffs' request for injunctive relief seeking an audit and recount of those convention results, concluding that Plaintiffs' claims presented a nonjusticiable intraparty dispute.  After the Michigan Court of Appeals denied review, Plaintiffs ginned up flimsy federal constitutional claims to get a second bite at the apple in this Court.  But, like their request to Ingham County Circuit Court, Plaintiffs' frivolous request for injunctive relief before this Court lacks any basis in either fact or law.

What is more, Plaintiffs' pending motion is moot.  Ballots for the November 2024 general election have already been finalized, printed, and made available to voters.  Indeed, yesterday, September 26, was the constitutional deadline for ballots to be made available to voters statewide.  Mich. Const. Art. II § 4(1)(h). Thus, there is no effective relief this Court can provide with respect to the Regents nomination vote for the November election.  In addition to being moot, Plaintiffs' claims are also barred by laches, as they waited two-and-a-half weeks after the August 24 nominating convention to file this lawsuit, and an additional day before seeking injunctive relief.

Further, Plaintiffs' Section 1983 claims are entirely baseless.  As a matter of law, neither the MDP nor its officers—all of whom are private actors—acted under color of state law in holding the internal party nominating convention on August 24, and Plaintiffs offer no persuasive authority to the contrary.  Nor do Plaintiffs allege with any plausibility or specificity any manner in which the MDP or its officers supposedly violated their constitutional rights—Plaintiffs simply allege that the convention vote did not comply with MDP's Bylaws and then label it a constitutional

violation.  But Plaintiffs have failed even to establish a violation of the Bylaws, let alone a constitutional problem.

Plaintiffs' lawsuit instead depends on their contrived post-hoc theory that the MDP should have used a different voting method at the convention for its nominations for Regents of the University of Michigan.  But that "slate" voting method, under the Bylaws and historical practice, applies only to internal party positions and has *never* been used to determine convention nominations for partisan general election positions, as even Plaintiffs acknowledged during the Ingham County Circuit Court evidentiary hearing on September 6.  Once the veneer on their conjured-up constitutional claims is stripped away, Plaintiffs are left with an intraparty dispute over convention voting procedures—precisely the type of dispute the Michigan Supreme Court held to be nonjusticiable in *American Independent Party of Michigan (Morse-Smith Faction) v. Secretary of State*, 247 N.W.2d 17 (Mich. 1976).  That is the conclusion reached by the Ingham County Circuit Court, and the same conclusion the Court should reach here.

At bottom, Plaintiffs seek: (a) production of voting data that does not exist—despite the MDP repeatedly informing Plaintiff Arraf of that fact; (b) a recount and audit of the Regents vote—despite the absence of any provision in MDP's Bylaws (or any statute or constitution, for that matter) permitting or requiring a recount or audit; and (c) placement of Plaintiff Arraf's name on the ballot—despite the fact that she lost the Regents vote and ballots have already been finalized, printed, and made available for distribution.  Plaintiffs have wholly failed to carry their burden to establish an entitlement to relief under state or federal law, and their motion should be denied.

Plaintiffs' claims were already rejected by the state court.  They are equally frivolous and borderline absurd here, where they ask this Court to order Defendants to perform tasks not contemplated by the MDP's Bylaws (effectively thus asking to rewrite the Bylaws) or any other

law, and which, even if performed, would have zero practical impact on the statewide ballots.  In short, while Plaintiffs are allowed to be disappointed that Plaintiff Arraf did not prevail at her Party's convention to be a candidate for Regent, they should not be able to waste this Court's (or Defendants') time and resources with a baseless lawsuit that cannot result in a different outcome.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     The MDP Conducts Voting for Two Nominations for Regents of the University of Michigan During the August 24, 2024 Nominating Convention.**

Plaintiff Huwaida Arraf was one of three candidates who ran for the MDP's two nominations for Regents of the University of Michigan on the general election ballot in 2024. (Compl. ¶¶ 1, 17, ECF No. 1, PageID.2-3, 6).  Each of these three candidates filed individual candidate petition paperwork and was nominated at the Fall Convention at issue *individually*—not as a slate—to run for the office.  (Ex. 1: Jensen Decl. ¶ 6).  None of the these three candidates ran as a "slate."  (Ex. 1: Jensen Decl. ¶ 6).

During the lead-up to the MDP's August 24, 2024 nominating convention, the AFL-CIO (a labor union) endorsed the other two candidates for Regents.  (AFL-CIO Flyer, ECF No. 1-19). The AFL-CIO, as it has for many years, referred to its endorsements as a "unity slate."  (*See* AFL-CIO Flyer, ECF No. 1-19; Ex. 1: Jensen Decl. ¶ 6).  The AFL-CIO uses the term "slate" in a colloquial sense, not as indicating a candidate "slate" as that term is used in the MDP's Rules for Voting and Elections in the Michigan Democratic Party ("Voting Rules").  (Ex. 1: Jensen Decl. ¶ 6).  More importantly, the MDP has nothing to do with the AFL-CIO's endorsement of the so-called "slate" labels it assigns to its preferred candidates.  (*See* Ex. 1: Jensen Decl. ¶ 6).[1]

---

[1] Plaintiffs' witness conceded as much before the Ingham County Circuit Court.  (Ex. 2: Sept. 6 Hr'g Tr. at 101:23-103:5, 105:23-24).

Candidate "slates" within the MDP, which are subject to complex voting requirements, are used only for internal multiple-position offices within the MDP, "such as County or District Executive Committee members, delegates or alternates to the State Central Committee, delegates or alternates to the Democratic National Convention, or members of the Democratic National Committee," as indicated in Sections 2.1, 2.5, and 6 of the Voting Rules.  (Ex. 1: Jensen Decl. ¶ 5; Voting Rules §§2.1, 2.5, 6, ECF No. 1-4, PageID.63, 65).  Slate voting procedures do not apply to and have not been used by the MDP to determine which candidates for partisan offices will appear on a general election ballot.  (Ex. 1: Jensen Decl. ¶ 5).

During the MDP's August 24, 2024 nominating convention, credentialed voters voted for the two nominations for Regents of the University of Michigan *individually*, not as groups running on a slate.  (Ex. 1: Jensen Decl. ¶ 6).  After voting was complete and the votes had been tallied, the other two candidates won the two nominations for Regents of the University of Michigan. (Compl. ¶ 40, ECF No. 1, PageID.12).  Accordingly, pursuant to its obligations under Mich. Comp. Laws § 168.283, the MDP certified the names of the other two candidates to the Secretary of State for the November ballot.  (Compl. ¶ 104, ECF No. 1, PageID.25).

The MDP also provided all three candidates for Regents with the raw voting data on August 25, 2024.  (L. Barnes Email, ECF No. 1-5).  No additional "raw" data exists.  (Ex. 1: Jensen Decl. ¶ 7).  Plaintiff Arraf subsequently filed an appeal within MDP regarding the Regents vote pursuant to Article 12 of the Rules of the Michigan Democratic Party (the "Bylaws"), last revised in 2018. (Arraf Appeal, ECF No. 1-12).  That appeal was denied by the Appeals Committee at a meeting held on Sunday, September 22, 2024.

**B.**     **Plaintiffs Lose Their Preliminary Injunction Request in Ingham County Circuit Court and Then File This Lawsuit, Seeking the Same Relief.**

Plaintiffs waited nearly two weeks after the convention to seek court action.  On September 5, 2024, Plaintiffs commenced a lawsuit in Ingham County Circuit Court against the MDP, Lavora Barnes, and the Secretary of State, claiming that MDP should have used Plaintiffs' preferred method of "slate" voting procedures to determine the nominations for Regents of the University of Michigan (even though they do not apply); that the MDP allowed voters to vote in the election who were not properly credentialed; that the MDP refused to release the raw voting data; and that the MDP's State Central Committee improperly ratified the results of the election.  (*See* Ingham Cty. Compl., ECF No. 3-2).  Plaintiffs asserted four claims: (1) for a declaratory judgment finding that MDP breached its Bylaws; (2) for injunctive relief requiring MDP to audit or investigate the election results and/or recount the votes; (3) for breach of contract (the MDP Bylaws); and (4) for violation of Michigan's Nonprofit Corporation Act.  (*See id.*).

Plaintiffs sought an ex parte temporary restraining order and preliminary injunction: (a) ordering the MDP to conduct an investigation or audit of the Regents vote; (b) ordering the MDP to conduct a recount; (c) ordering the MDP to expedite Plaintiff Arraf's internal MDP appeal; and (d) prohibiting the Secretary of State from finalizing the general election ballot until the MDP's investigation or audit was completed.  (*See* Ingham Cty. Mot., ECF No. 3-3).

The circuit court held a show cause hearing on Friday, September 6, 2024.  Over the course of more than four hours, the circuit court heard oral argument from the parties' attorneys and received testimony from Plaintiff Arraf, Plaintiff Kirby, and witness Liano Sharon (who submitted the affidavit attached as Exhibit 19 to Plaintiffs' Complaint here (ECF No. 1-20)).  (See Ex. 2: Sept. 6 Hr'g Tr.). The circuit court, after careful consideration, then issued an order denying Plaintiffs' motion for a temporary restraining order and preliminary injunction.  (Ex. 3: Ingham

Cty. Order).  Plaintiffs filed an application for leave to appeal to the Michigan Court of Appeals, which the court denied on September 9, 2024 (ECF No. 3-6).

Two days later, Plaintiffs filed this lawsuit, alleging the same claims for breach of contract (Count V) and violation of Michigan's Nonprofit Corporation Act (Count VI), but adding claims for violation of the Michigan Constitution (Count IV) and 42 U.S.C. § 1983 (First Amendment – Count I, Due Process – Count II, and Equal Protection – Count III).  In support of their new federal claims, Plaintiffs allege only that the Regents vote at the August 24 convention was "marred" by "irregularities" and that Plaintiffs "experienced voter intimidation and voter suppression" in unspecified ways.  (Compl. ¶¶ 128, 132, 137-38, ECF No. 1, PageID.32-34).  Plaintiffs' Complaint does not specify how any of the Defendants purportedly acted under color of state law for purposes of Section 1983 or in what acts each of them engaged.

On September 12, 2024, Plaintiffs filed their instant motion for a preliminary injunction and order to show cause (ECF No. 3).  Plaintiffs ask this Court to compel the MDP to:  (A) either (1) "[t]abulate" the votes for Regents of the University of Michigan nominations "using the slate tabulation method," *i.e.*, conduct a recount using Plaintiffs' preferred (but inapplicable) voting procedures, and "[i]mmediately communicate the results of the retabulation to the Secretary of State", or (2) provide Plaintiffs with "the raw voting data" and "a list of the MDP members properly credentialed to vote" during the convention; (B) "cooperate with Plaintiffs to audit the data"; and (C) "[i]mmediately communicate the results of the audit to the Secretary of State." (ECF No. 3, PageID.182-183).   Without leave of court, Plaintiffs filed a supplemental memorandum on September 13, 2024.

Defendants' counsel contacted Plaintiffs' counsel by email on September 24, 2024, to initiate the meet-and-confer process directed by the Court's briefing order, and to request that

Plaintiffs voluntarily dismiss this lawsuit based on the mootness, laches, and frivolity concerns that Defendants have explained in more detail in this response.  (Ex. 4: 09/24/2024, 11:49 a.m. Email).  In response, Plaintiff Arraf acknowledged that "the request for a preliminary injunction may soon be moot" and clarified that Plaintiffs are, apparently, not currently "request[ing] to 'change the ballots'" but are seeking the convention voting data to potentially make such a request "before the November ballots become unchangeable."  (Ex. 4: 09/26/2024, 12:33 a.m. Email; 09/25/2024 11:50 a.m. Email).  Plaintiffs did not identify when they believe the ballots will "become unchangeable" or acknowledge that printing and distribution deadlines have already passed.  Defendants' counsel then invited a telephonic meet-and-confer.  Counsel for the parties met and conferred by telephone on September 26, 2024, for approximately 30 minutes, but did not reach an agreement to resolve this dispute.  Plaintiffs' counsel provided a follow-up written proposal on the afternoon of September 27, 2024.

## STANDARD OF REVIEW

In evaluating a motion for a preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."  *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). Plaintiffs bear the burden of proof.  *Livonia Prop. Holdings v. 12840-12976 Farmington Rd. Holdings*, 717 F. Supp. 2d 724, 731 (E.D. Mich. 2010), *aff'd*, 399 F. App'x 97 (6th Cir. 2010).  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

"[T]he preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001).

## **ARGUMENT**

### I. **PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

#### A. **Plaintiffs' Claims Are Barred by Laches.**

"[I]t is well established that in election-related matters, extreme diligence and promptness are required." *Michigan Chamber of Com. v. Land*, 725 F. Supp. 2d 665, 681 (W.D. Mich. 2010) (internal quotation marks omitted). "An action may be barred by the doctrine of laches if: (1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant is prejudiced by this delay." *King v. Whitmer*, 505 F. Supp. 3d 720, 731 (E.D. Mich. 2020) (concluding that § 1983 lawsuit brought by voters following 2020 general election based on alleged "widespread voter irregularities and fraud in the processing and tabulation of votes and absentee ballots" was barred by laches); *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010).

Here, the MDP's nominating convention for the November general election occurred on Saturday, August 24, 2024. Yet Plaintiffs inexplicably waited more than two weeks, until Wednesday, September 11, 2024, to file this lawsuit, and offer no explanation as to why.[2] When

---

[2] Even the Ingham County Circuit Court questioned Plaintiffs about the delayed, eleventh-hour timing of their state court lawsuit filed on September 5, 2024. (Ex. 2: Hr'g Tr. at 29-30 ("You are here, as I just referenced, asking for equitable relief. Why wait so long? This case -- the vote was taken on what date -- August 24th; is that correct? *** And the motion was filed yesterday. *** But here we are on the day that the Secretary of State, as I understand it, is set to finalize the ballot

they saw their ballots and cast their votes during the convention, Plaintiffs knew (or at least certainly should have known) that they were not voting on candidates for Regents as a slate but rather as individuals.  Plaintiffs undisputedly knew as of the evening of August 24 that Plaintiff Arraf had not won one of the two nominations for Regents.  (Compl. ¶ 40, ECF No. 1, PageID.12). And Plaintiffs were advised as of August 25, 2024, that their only internal recourse under MDP's Bylaws was through an appeal, which would take up to 45 days.  (Compl. ¶¶ 47-48, ECF No. 1, PageID.13).

Even with that knowledge, Plaintiffs waited until the last minute while critical deadlines for the November 2024 election fast approached.  By statute, the Secretary of State was required to "send to the county clerk of each county a notice in writing of such primary or election, specifying in such notice the federal, state and district offices for which candidates are to be nominated or elected" no later than Friday, September 6, 2024.  Mich. Comp. Laws § 168.648. Proof copies of the November ballot were required to be available in county clerks' offices for public review by Monday, September 8, 2024.  Mich. Comp. Laws § 168.710.  Proof copies of the ballot were also required to be concurrently mailed to candidates to review and identify any errors, which candidates had five business days to do.  Mich. Comp. Laws § 168.711.  Absent voter ballots were then required to be delivered to the county clerk at least 47 days before the election, *i.e.*, by Thursday, September 19, 2024, Mich. Comp. Laws § 168.713, and local clerks must have sent absent voter ballots to military and overseas voters with applications on file no later than Saturday, September 21, 2024, Mich. Comp. Laws § 168.759a(5); Mich. Const. Art. II § 4(1)(b).  Moreover,

---

and I grant you that in the legal world and putting together briefs, arguments, exhibits and so forth, perhaps a week or two is not a lot of time, but it was filed literally at the final hour. So why wait? Why did you wait so long to file?").

under the Michigan Constitution, absent voter ballots must be available to domestic electors as of yesterday, Thursday, September 26, 2024.  Mich. Const. art. II § 4(1)(h).

Simply put, by the time Plaintiffs filed this lawsuit, it was and is too late for the Court to provide effective relief—ballots for the November 2024 general election have now been finalized, proofed, printed, and made available to voters.  Even if Plaintiffs are not asking this Court, as part of their request for preliminary injunctive relief, to somehow order the re-proofing and re-printing of the ballots (over which Defendants, of course, have no control), it appears that what Plaintiffs currently seek—*i.e.*, data from the MDP to which they are not entitled under any Bylaw or statute—is meant to aid in some future attempt to ask the Secretary of State to re-do the ballots. (*See* Ex. 4: 09/25/2024 11:50 a.m. Email, 09/26/2024 12:33 a.m. Email).  None of that can happen at this time under the Michigan Election Law and Michigan Constitution.  This is precisely why courts in Michigan commonly apply laches in cases challenging a candidate's eligibility for elective office, since "legal challenges that affect elections are especially prone to causing profound harm to the public and to the integrity of the election process the closer in time those challenges are made to the election."  *Davis v. Sec'y of State*, --- N.W.3d ----, 2023 WL 3027517, at *6 (Mich. Ct. App. 2023); *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.") (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006)).

Indeed, just last week, another federal court in Michigan denied a candidate's request to be removed from the November 2024 ballot, holding that his claims were likely barred by laches. *Kennedy v. Benson*, --- F. Supp. 3d ----, 2024 WL 4231578, at *3, *4 (E.D. Mich. Sept. 18, 2024). There, the candidate's claims "became ripe on August 29, 2024, when [the Secretary of State]

made her final decision to reject Plaintiff's notice of withdrawal," but he waited until September 10, 2024, to file a lawsuit in federal court.  *Id*. at *4.  The court concluded that "Plaintiff's delay in bringing [this case] was unreasonable and could work to render inefficient the election process by causing missed deadlines and costing the State of Michigan hundreds of thousands of dollars in reprinting costs."  *Id.  See also Kennedy v. Sec'y of State*, --- N.W.3d ----, 2024 WL 4125710, at *3 (2024) (Welch, J., concurring) (noting prejudice caused by same candidate waiting until two weeks before ballot printing deadline to seek to have name removed from ballot); *Gelineau v. Johnson*, 904 F. Supp. 2d 742, 745 (W.D. Mich. 2012) ("Yet Plaintiffs showed no diligence in asserting their rights until a mere 40 days before the election, after the state began printing ballots and indeed after their first motion to modify the ballots failed. The prejudice from this delay is . . . great[] . . . . To the extent they seek to change the State's ballots, their claim fails under the doctrine of laches.").

Michigan's Court of Appeals reached the same conclusion in another recent case, *Nykoriak v. Napoleon*, 964 N.W.2d 895 (Mich. Ct. App. 2020), where the plaintiff filed an action seeking to disqualify the incumbent candidate based on an allegedly defective affidavit of identity.  The affidavit had been filed on April 15, 2020, and the plaintiff timely filed objections with the Wayne County Clerk and Board of Election Commissioners, then waited "another 24 days" before filing his lawsuit.  *Id*. at 903.  The Court of Appeals affirmed that laches barred the plaintiff's claim, since the plaintiff had not convincingly explained his delay in filing suit—instead alleging only that, "during this time, he considered his options and hired counsel, who investigated his claim, conducted research, and drafted and filed his pleadings"—and the Wayne County defendants had materially changed their position in the meantime, since ballots had been printed and delivered to local clerks.  *Id.* at 903-04.  *See also Detroit Unity Fund v. Whitmer*, 819 F. App'x 421 (6th Cir.

2020) (affirming district court's denial of preliminary injunction seeking to prevent enforcement of filing deadline for local ballot initiatives, where district court found that defendants would be prejudiced because "proofing and printing ballots for the November election" was due to start in a few weeks, *Detroit Unity Fund v. Whitmer*, No. 20-12016, 2020 WL 6580458, at *5 (E.D. Mich. Aug. 17, 2020)).

The Court should reach the same conclusion here and hold that Plaintiffs' claims are barred by laches. Plaintiffs' claims arose on August 24, 2024, but Plaintiffs waited 18 days to file suit, until ballot finalization, printing, and distribution deadlines were imminent, with no articulated reason. This clear "'lack of diligence'" warrants application of laches. *Gelineau v. Johnson*, 896 F. Supp. 2d 680, 683 (W.D. Mich. 2012). Further, the MDP, its members, and the general public would be prejudiced by Plaintiffs' delay. MDP long ago certified the names of the Regents candidates to the Secretary of State, and ballots have been printed and made available. Plaintiffs' requested relief would require the MDP to expend significant resources undertaking any "retabulation" or "audit" that could have no practical effect since ballots have already been printed and made available to the public. Plaintiffs' claims are consequently barred by laches. *See Davis*, 2023 WL 3027517, at *6 ("'Courts can reasonably endeavor to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials.'").

**B. Plaintiffs' Claims for Relief Are Moot.**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *King*, 505 F. Supp. 3d at 730 (internal quotation marks omitted). "An actual, ongoing controversy exists when there is a genuine dispute between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557-58 (6th Cir. 2021) (cleaned up). "If the issues

presented are no longer live or the parties lack a legally cognizable interest in the outcome, then the case is moot and the court has no jurisdiction." *Id.* (cleaned up).

Here, ballots for the November 2024 general election have already been finalized, proofed, printed, delivered to local clerks, and made available for absent voters as well as sent to military and overseas voters.  Mich. Const. Art. II § 4(1)(b), (h); Mich. Comp. Laws §§ 168.648, 168.710, 168.711, 168.713, 168.759a(5).  This Court cannot provide any effective relief to Plaintiffs—any "retabulation" or "audit" of the Regents vote from the nominating convention would be of no import since ballots have already gone out to the public.  (*See* Prelim. Inj. Mot., ECF No. 3, PageID.182-183).  Any declaratory relief relative to the August 24 nominating convention would likewise lack any practical effect.  (*See* Compl., ECF No. 1, PageID.40-41).  Since the relief Plaintiffs seek would not actually impact their legal rights, their claims are moot.  *See, e.g.*, *King*, 505 F. Supp. 3d at 730-31 (concluding that lawsuit seeking to decertify 2020 election and direct state to certify opposing candidate as winner of presidential election was moot because results had been canvassed and certified).

Further, nothing in Plaintiffs' Complaint suggests that any of Plaintiffs' concerns regarding voting at an MDP nominating convention are likely to recur in future election cycles.  Plaintiffs' claims are not saved by the "capable of repetition yet evading review" exception to mootness. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) ("This doctrine applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur."); *Hargett*, 2 F.4th at 560 ("The challenged action, however, is not capable of repetition if it is based on a unique factual situation.").

C.      **Plaintiffs' Claims Present a Nonjusticiable Intraparty Dispute.**

Additionally, rather than presenting actionable claims, Plaintiffs have merely cloaked a nonjusticiable intraparty dispute as a constitutional and contract claim.  It is well established that "[a]s a general rule, the courts will not interfere with the internal affairs of a political party or determine a controversy within the organization."  8A Mich. Civ. Jur. Elections § 20.  In *O'Brien v. Brown*, 409 U.S. 1 (1972), for example, the U.S. Supreme Court stayed lower court decisions concluding that a national political party's credentialing committee had violated the constitutional rights of various delegates to attend the national convention.  The Court specifically noted that "[i]t has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated."  *Id.* at 4.

The Michigan Supreme Court confirmed that principle in *American Independent Party of Michigan (Morse-Smith Faction) v. Secretary of State*, 247 N.W.2d 17 (Mich. 1976).  There, two factions of the party held their own conventions, nominated their own sets of candidates, and sought to have their respective candidates included on the ballot.  *Id.* at 17-18.  The Director of Elections advised that he would only accept for the ballot one set of candidates approved by both factions.  *Id.* at 17.  On appeal, the Michigan Supreme Court held that "[t]he Director of Elections correctly left to the American Independent Party the resolution of the intra-party dispute."  *Id.* at 19, citing *O'Brien*, 409 U.S. at 4; *see also id.* ("[T]he political processes should function free from judicial supervision unless infringement of constitutional rights is alleged.") (internal quotation marks omitted); *Am. Indep. Party v. Austin*, 420 F. Supp. 670, 673 (E.D. Mich. 1976) ("It would not be proper for a federal court to select a slate of candidates.").

In this case, as the Ingham County Circuit Court already recognized (Ex. 2: Sept. 6 Hr'g Tr. at 178-181), Plaintiffs' dispute is fundamentally about the internal workings and affairs of the

MDP, specifically, the voting at its August 2024 nominating convention.  Plaintiffs take issue only with whether the MDP properly followed its internal procedures and voting rules in conducting the voting for candidates for Regents of the University of Michigan, and allege that these supposed procedural violations impacted the outcome of the vote.  (*See* Compl. ¶¶ 72-114, ECF No. 1, PageID.19-27).  The question of who appears on a general election ballot as the nominees endorsed by a political party is fundamentally a political question that must be left to the party's internal processes to determine—that is the precise proposition for which *American Independent Party of Michigan* stands.  In other words, this case presents a quintessential intraparty dispute that the courts have long held should be left to the internal mechanisms and resolution of the political party.  E.g., *Am. Indep. Party of Mich.*, 247 N.W.2d 17.

> **D.      Plaintiffs Have Failed to State a Plausible Claim for Relief.**
>
> > **1.      Defendants did not act under color of state law, and Plaintiffs' Section 1983 claims fail on their face.**

In their motion, Plaintiffs' very brief argument on likelihood-of-success focuses on their federal constitutional claims under Section 1983.  But Plaintiffs make little meaningful effort to actually establish a likelihood of success, nor realistically can they.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  As a matter of law, MDP and its officers (Barnes and Jensen)—all of whom are private actors—did not act under color of state law for purposes of Section 1983.  Initially, as even Plaintiffs admit, "MDP is a private, nongovernmental organization" (Prelim. Inj. Br., ECF No. 3, PageID.189), neither Barnes nor Jensen is a government agent or employee, and it is not clear under what state law Plaintiffs believe they were acting in this case.  *See Inner City Contracting, LLC v. Charter Twp. of Northville,*

*Mich.*, 87 F.4th 743, 757 (6th Cir. 2023) (requiring that defendant's actions "'so approximate state action that they may be fairly attributed to the state'" for private actor to be subject to § 1983).[3]

Plaintiffs' motion relies on three cases to support the notion that MDP's "fall nomination conventions . . . and its elections to select the party's nominees for certain [unspecified] statewide offices[] are conducted under color of state law." (Prelim. Inj. Br., ECF No. 3, PageID.189). None is applicable here. *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), was not a Section 1983 case. And *Smith v. Allwright*, 321 U.S. 649 (1944), addressed a situation where a Black voter who was eligible to vote under Texas law was denied the right to participate in a primary election held by a political party. Since "[p]rimary elections [in Texas] are conducted by the party under state statutory authority" and the political party selected the election officials and canvassed the primary returns, the Court concluded that the party engaged in state action. *Id.* at 663-65.

MDP does not engage in similar action by conducting internal elections for candidate nominations. The third case cited by Plaintiffs, *Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192, 1196 (6th Cir. 1990), confirms that. In *Banchy*, the court held that the plaintiffs, who "were not afforded the opportunity to vote for their respective ward chairman as provided for in the party constitution," could not bring a Section 1983 claim against their political party. The court based its conclusion on the fact that the party was not engaged in the type of governmental

---

[3] Courts use three tests to evaluate the closeness of the relationship. "The public function test requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). "The state compulsion test requires that a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Id.* at 829. "Under the nexus test, 'the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 830. Plaintiffs do not mention, let alone attempt to meet, any of these three tests here with respect to any Defendant.

function at issue in *Smith*—the conduct of a primary election—but rather conducting its internal operations. *See id.* at 1196; *id.* at 1195-96 ("In *Smith*, the Supreme Court struck down the Texas Democratic Party's whites-only primary voting policy. The Court reasoned that since the party primary was an integral part of the election process then blacks must be allowed to vote in order to secure their constitutional right to ballot access.").

This is the same conclusion routinely reached by courts outside of the limited contexts where political parties are expressly delegated authority by state legislatures to run elections. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 396 (6th Cir. 2016) ("Here, the Ohio Republican Party has not been assigned an integral part in the election process that is usually performed by the state.  By filing a protest against a nomination petition under this statute—or having an agent file a protest—the Ohio Republican Party is not engaging in state action.") (cleaned up); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 632 (E.D. Pa. 2018) ("Plaintiffs have failed to plausibly plead that the Democratic Committee participated in joint action with the state or exercised powers traditionally reserved to the state. Any alleged conduct of the Democratic Committee at the polls was performed by the private political party and not the state. The Democratic Committee did not have 'complete and unified control' over the residents of the 197th District, and it was not 'assigned an integral part of the election process that is usually performed by the state.'  Although the Democratic Party's role is defined by the Pennsylvania Election Code, the state did not assign the Democratic Committee an integral role in the special election that is usually performed by the state."); *Federspiel v. Ohio Republican Party State Cent. Comm.*, 867 F. Supp. 617, 622 (S.D. Ohio 1994) (concluding, where "Plaintiffs allege that the Party conducted its election of officers in a manner that was unverifiable and in violation of its

own constitution," that statutory authorization for state central committee to choose between "two slates of officers" elected to county committee did not create state action).

Further, while Plaintiffs contend that they "allege numerous violations of their constitutional rights, and specifically of their rights under the First and Fourteenth Amendments" (Prelim. Inj. Br., ECF No. 3, PageID.189), Plaintiffs' Complaint simply includes a laundry list of the "irregularities" that Plaintiffs believe occurred during the August 24th convention (*see* Compl. ¶¶ 128, 132, 138, ECF No. 1, PageID.31-34).  Plaintiffs offer no legal authority suggesting that any of these purported "irregularities" rises to the level of a federal constitutional violation—even if Plaintiffs could theoretically bring a Section 1983 claim against Defendants.

### 2. Plaintiffs have not alleged a plausible breach of the Bylaws.

Plaintiffs do not even attempt to show in their motion that they are likely to succeed on their breach of contract claim (Count V).  Regardless, as confirmed by the Declaration of Christine Jensen (MDP's Executive Director) and the testimony at the show cause hearing in Ingham County, Plaintiffs' claims that the MDP violated its internal procedures are also factually meritless.

Although Plaintiffs wish that the MDP would have used slate voting procedures in the University of Michigan Regents voting (Compl. ¶¶ 72-79, ECF No. 1, PageID.19-20), slate voting procedures do not apply to MDP state nominating convention votes to determine which candidates for partisan offices will appear on a general election ballot (Ex. 1: Jensen Decl. ¶¶ 4-5).  Rather, these slate voting procedures are used for the types of multiple-position **internal party** offices enumerated in Sections 2.1 and 6.1 of the Voting Procedures.  (Ex. 1: Jensen Decl. ¶ 5).  During the state court show cause hearing, Plaintiff Arraf and Mr. Sharon both admitted that they could not identify an example of the MDP ever using slate voting for a partisan election for an office on the general election ballot (*i.e.*, for a non-internal position).  (Ex. 2: Sept. 6 Hr'g Tr. at 99:7-100:5, 142:6-143:6).

Moreover, none of the candidates for Regents of the University of Michigan ran on a "slate"—each filed individual candidate petition paperwork and was nominated and voted on as an individual.  (Ex. 1: Jensen Decl. ¶ 6).  While some promotional communications distributed by a labor union referred to certain candidates as a "unity slate," this is not a term of art from the MDP, but simply an informal label long used by the union when endorsing their preferred candidates.  (Ex. 1: Jensen Decl. ¶ 6).  Mr. Sharon admitted on cross-examination during the Ingham County hearing that the flyer using the "unity slate" label was an AFL-CIO endorsement, and further admitted that he was speculating whether the MDP actually approved of the AFL-CIO's endorsement in that regard.  (Ex. 2: Sept. 6 Hr'g Tr. at 101:23-103:5, 105:23-24).

With respect to MDP's alleged refusal to release "raw" voting data from the election, Plaintiffs do not identify any provision of the Bylaws requiring MDP to provide this data.  (*See* Compl. ¶¶ 95-114, ECF No. 1, PageID.23-27).  MDP cannot violate an obligation that does not exist.  Regardless, MDP has already provided Plaintiff Arraf with the raw voting data from the 2024 convention vote for the candidates for University of Michigan Regents, as requested. (Compl. ¶ 97, ECF No. 1, PageID.23; Ex. 1: Jensen Decl ¶ 7).

Regarding Plaintiffs' assertion that improperly credentialed voters were allowed to vote during the convention (Compl. ¶¶ 80-94, ECF No. 1, PageID.22-23), Plaintiffs' own evidence refutes this claim.  As explained in the written statement provided by Voatz, "[a]ll 1422 convention delegates whose votes were successfully recorded in the system before voting closed . . . on August 24th, 2024, were credentialed in person at the Lansing Center on that date."  (ECF No. 10-1, PageID.404).  While the number of credentialed voters was announced during the convention as 1,248, at that time, "several delegates were still waiting in helpdesk queues and had not yet

completed their technical credentialing through the mobile app or iPad terminals. A total of 1488 delegates were eventually credentialed, of which 1422 voted."  (ECF No. 10-1, PageID.404).

And, as to Plaintiffs' contentions regarding whether a quorum was present during the State Central Committee ratification meeting, the MDP State Central Committee Chair determined that a quorum was present during this meeting, and no objection was ever raised during that meeting as to whether a quorum was present. (Ex. 1: Jensen Decl ¶ 9).  The Chair's determination that a quorum was presented was within her purview, absent an objection, which was not lodged.  (Ex. 1: Jensen Decl ¶ 9).  Plaintiffs offer no evidence or argument to the contrary.  Indeed, during the Ingham County show cause hearing, Plaintiffs' witness Mr. Sharon admitted that he did not lodge an objection regarding the purported absence of a quorum and was not aware of anybody else lodging an objection.  (Ex. 2: Sept. 6 Hr'g Tr. at 110:12-22).

Finally, Plaintiffs do not point to any provision of the Bylaws that would allow them to seek a "retabulation" or "audit" of the Regents vote.  That is because none exists.  Plaintiff Arraf conceded that during the Ingham County hearing: "Q. . . . [D]o the MDP bylaws say anything about conducting investigations or audits after the convention? A. Not that I recall. No, it does not."  (Ex. 2: Sept. 6 Hr'g Tr. at 149:17-20).   The unavailability of relief under the Bylaws underscores the futility of Plaintiffs' claims.

### 3.    Plaintiffs have not alleged a cognizable breach of the Michigan Constitution.

Plaintiffs' claim for violation of the Michigan Constitution (Count IV)—which they again do not address in their motion—involves Article VIII, Section 5, which provides that "[t]he board of each institution [the University of Michigan, Michigan State University, and Wayne State University] shall consist of eight members who shall hold office for terms of eight years and who shall be elected as provided by law."  Mich. Const. Art. VIII § 5.  (*See* Compl. ¶¶ 57, 142, ECF

No. 1, PageID.16, 35).  Although Plaintiffs do not explain how precisely they think Defendants have violated this provision, Plaintiffs' theory appears to be that if, in their view, there is any irregularity at all in the process for nominating and electing board members of any of these three institutions—no matter how trivial the legal issue or its nature—that automatically rises to the level of a constitutional violation under Article VIII, Section 5.  For example, under Plaintiffs' conceptualization, if a political party issues a notice of the convention voting procedures a day later than required by its bylaws, that would violate the Michigan Constitution.  Plaintiffs offer zero legal authority to support this novel, absurdly broad claim.

### 4.     The MDP is not subject to Michigan's Nonprofit Corporation Act.

As a matter of law, the MDP simply is not a Michigan nonprofit corporation, and Plaintiffs are not "shareholder[s] or member[s] of record of a corporation" entitled to request records under Mich. Comp. Laws § 450.2487.  Rather, as Plaintiffs agree, the MDP is under the umbrella of the Democratic State Central Committee.  (Compl. ¶ 4, ECF No. 1, PageID.3).  The Democratic State Central Committee is organized as political party committees under state and federal campaign finance laws and registered with the Michigan Secretary of State and the Federal Election Commission.  *See* Mich. Comp. Laws § 169.211(6).[4]  Michigan's Nonprofit Corporation Act is wholly inapplicable here, and Plaintiffs do not argue otherwise in their motion.

## II.     PLAINTIFFS' REQUESTED INJUNCTION WOULD CAUSE SEVERE HARM TO THE MDP AND MICHIGAN ELECTION OFFICIALS.

Granting Plaintiffs' request for injunctive relief would cause significant burdens not only to the MDP and its members but also to Michigan election officials.  If Plaintiffs have their way,

---

[4] See also MICH. SEC'Y OF STATE, Mich Comm Statement of Organization, *Mich Dem State Cent Comm*, available at https://cfrsearch.nictusa.com/committees/000380#documents (listing Democratic State Central Committee as "State Political Party" on Michigan campaign finance repository).

MDP will be forced to "retabulate" the Regents vote using a complex slate voting procedure that MDP has never used in this context and which its members had no notice would be used to determine the Regents nominations.  That sudden change would be highly unfair to the hundreds of MDP members who voted at the August 24 convention.  Or, if Plaintiffs' "audit" request is granted, MDP will have to undertake a novel auditing process, with no established procedures or other guidance on how such an audit should operate, since the MDP's Bylaws do not actually provide for the relief Plaintiffs seek.

Plaintiffs' requested injunction is also likely to cause harm to Michigan elections officials. If Plaintiffs' ultimate goal here is to have Plaintiff Arraf's name appear on the ballot (which is unclear to Defendants at this time), any further request of the Michigan Secretary of State in that regard will do nothing except interfere with her responsibilities as the State's Chief Elections Officer on the eve of a general and Presidential election.[5]  Recognizing "the fact that elections require the existence of a reasonable amount of time for election officials to comply with the mechanics and complexities of our election laws" and that "[t]he state has a compelling interest in the orderly process of elections," courts in this state have for decades "reasonably endeavor[ed] to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials."  *New Democratic Coal. v. Austin*, 200 N.W.2d 749, 755-56 (Mich. Ct. App. 1972); see also *Crookston*, 841 F.3d at 399 (noting that change on eve of election in manual promulgated by the Michigan Secretary of State that was used to train tens of thousands of poll workers would be "a recipe for election-day confusion for voters and poll workers alike").

---

[5] Notably, the Michigan Secretary of State is not a party to this case.  So, even if Plaintiffs' Complaint can be construed to request that Plaintiff Arraf's name be ordered to appear on the ballot—which at this time would require every clerk in all 83 counties statewide to re-print ballots—there is no named defendant that could be ordered to effectuate that absurd outcome.

III.   **THE PUBLIC INTEREST FAVORS DENIAL OF PLAINTIFFS' REQUESTED INJUNCTION.**

"The public has an interest in both the finality and stability of the election process." *Bennink v. City of Coopersville*, No. 5:06-CV-82, 2006 WL 1547279, at *3 (W.D. Mich. June 5, 2006).  As explained above, ballots for the November 2024 general election have already been finalized, printed, and made available for absentee, military, and overseas voters.  Plaintiffs' requested relief would create significant confusion and uncertainty among members of the public regarding which candidates are actually on the ballot, whether the ballot is likely to change, and what happens to their votes if they have already submitted their absent voter ballots by the time that change is made.  That risk of confusion and disruption to the orderly election process strongly favors denying Plaintiffs' requested relief.

## CONCLUSION

The MDP fulfilled its statutory duty to canvass the convention votes, to determine the party's nominees for the general election, and to certify those nominees to the Secretary of State within one business day, as required by Mich. Comp. Laws § 168.283, and in accordance with the procedures required by the MDP's Bylaws and Voting Procedures.  Plaintiffs, who never objected or otherwise moved for a different process during the party convention, have not identified any legal path—statutory or otherwise—that would permit this Court to undo that convention's results and the certification to the Secretary of State.  Defendants respectfully request that the Court deny Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By: */s/Scott R. Eldridge*
       Scott R. Eldridge (P66452)
       Erika L. Giroux (P81998)
       120 N. Washington Square, Suite 900
       Lansing, Michigan  48933
       (517) 487-2070
       eldridge@millercanfield.com
       giroux@millercanfield.com
       *Attorneys for Defendants*

Dated: September 27, 2024

## CERTIFICATION PURSUANT TO LCivR 7.2(b)(ii)

The undersigned hereby certifies that, to the best of his knowledge, this Brief, in its entirety (exclusive of the cover page, table of contents, index of authorities, signature block, exhibits, affidavits, certificate of service, and this certification), contains 7,745 words (as checked with Microsoft Word's word-counting function).

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Miller, Canfield, Paddock and Stone P.L.C.

Dated: September 27, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Miller, Canfield, Paddock and Stone P.L.C.

Dated: September 27, 2024