# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all similarly
situated,

      Plaintiffs,

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, Chair of the
Michigan Democratic Party, and CHRISTINE
JENSEN, in her official capacity as executive
director of the Michigan Democratic Party,

      Defendants.

Case No. 1:24-cv-933

Hon. Jane M. Beckering

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 480444
(917) 588-3482
Huwaida.arraf@gmail.com
*Attorney for Plaintiffs*

Scott R. Eldridge (P66452)
Erika L. Giroux (P81998)
MILLER, CANFIELD, PADDOCK, AND STONE, PLC
120 N. Washington Square, Suite 900
Lansing, MI  48933
(517) 487-2070
eldridge@millercanfield.com
giroux@millercanfield.com
*Attorneys for Defendants*

---

## CERTIFICATE OF CONCURRENCE REGARDING DEFENDANTS MICHIGAN DEMOCRATIC PARTY, LAVORA BARNES, AND CHRISTINE JENSEN'S MOTION TO DISMISS

Pursuant to W.D. Mich. LCivR 7.1(d), on September 24, 2024, counsel for Defendants emailed Plaintiff Huwaida Arraf, who is representing herself and simultaneously acting as counsel for the other Plaintiffs, explaining in detail the numerous deficiencies in Plaintiffs' lawsuit, including that Plaintiffs' requested relief was moot and barred by laches; requesting that Plaintiffs voluntarily withdraw this lawsuit; and advising that Defendants would be filing a motion to dismiss

on the various grounds set forth in Defendants' counsel's email.  On September 26, 2024, Defendants' counsel met and conferred with Ms. Arraf via telephone for approximately 30 minutes regarding the relief sought by Plaintiffs' now-withdrawn motion for preliminary injunction and Defendants' position on the deficiencies in Plaintiffs' lawsuit.  On October 3, 2024, Defendants' counsel again contacted Ms. Arraf via email to request that Plaintiffs concur in Defendants' motion to dismiss and highlighted that the relief requested by Plaintiffs is moot.  Plaintiffs declined to concur in Defendants' motion.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By:  */s/Scott R. Eldridge*
     Scott R. Eldridge (P66452)
     Erika L. Giroux (P81998)
     120 N. Washington Square, Suite 900
     Lansing, Michigan  48933
     (517) 487-2070
     eldridge@millercanfield.com
     giroux@millercanfield.com
     *Attorneys for Defendants*

Dated: October 11, 2024

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all similarly
situated,

      Plaintiffs,

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, Chair of the
Michigan Democratic Party, and CHRISTINE
JENSEN, in her official capacity as executive
director of the Michigan Democratic Party,

      Defendants.

Case No. 1:24-cv-933

Hon. Jane M. Beckering

**Oral Argument Requested**

---

Huwaida Arraf (NY 4707220)
45836 Eden Dr.
Macomb, MI 480444
(917) 588-3482
Huwaida.arraf@gmail.com
*Attorney for Plaintiffs*

Scott R. Eldridge (P66452)
Erika L. Giroux (P81998)
MILLER, CANFIELD, PADDOCK, AND STONE, PLC
120 N. Washington Square, Suite 900
Lansing, MI  48933
(517) 487-2070
eldridge@millercanfield.com
giroux@millercanfield.com
*Attorneys for Defendants*

---

## DEFENDANTS MICHIGAN DEMOCRATIC PARTY, LAVORA BARNES, AND CHRISTINE JENSEN'S MOTION TO DISMISS IN LIEU OF AN ANSWER

Defendants Michigan Democratic Party, Lavora Barnes, and Christine Jensen, by their counsel, Miller, Canfield, Paddock and Stone, P.L.C., move to dismiss Plaintiffs' Complaint in lieu of an answer pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), for the reasons explained in the attached Brief.

WHEREFORE, for the reasons set forth above and in Defendants' supporting brief, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety and with

prejudice, and award Defendants any and all other remedies the Court deems appropriate under the circumstances.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By:  /s/Scott R. Eldridge
        Scott R. Eldridge (P66452)
        Erika L. Giroux (P81998)
        120 N. Washington Square, Suite 900
        Lansing, Michigan  48933
        (517) 487-2070
        eldridge@millercanfield.com
        giroux@millercanfield.com
        *Attorneys for Defendants*

Dated: October 11, 2024

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

HUWAIDA ARRAF, JENNIFER
KIRBY, and MADELEINE TOCCO,
individually and on behalf of all similarly
situated,

      Plaintiffs,

v.

MICHIGAN DEMOCRATIC PARTY,
LAVORA BARNES, Chair of the
Michigan Democratic Party, and CHRISTINE
JENSEN, in her official capacity as executive
director of the Michigan Democratic Party,

      Defendants.

Case No. 1:24-cv-933

Hon. Jane M. Beckering

| | |
|---|---|
| Huwaida Arraf (NY 4707220)<br>45836 Eden Dr.<br>Macomb, MI 480444<br>(917) 588-3482<br>Huwaida.arraf@gmail.com<br>*Attorney for Plaintiffs* | Scott R. Eldridge (P66452)<br>Erika L. Giroux (P81998)<br>MILLER, CANFIELD, PADDOCK, AND STONE, PLC<br>120 N. Washington Square, Suite 900<br>Lansing, MI  48933<br>(517) 487-2070<br>eldridge@millercanfield.com<br>giroux@millercanfield.com<br>*Attorneys for Defendants* |

## <u>DEFENDANTS MICHIGAN DEMOCRATIC PARTY, LAVORA BARNES, AND CHRISTINE JENSEN'S BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................ 3

      A.    The MDP Conducts Voting for Two Nominations for Regents of the
           University of Michigan During the August 24, 2024 Nominating
           Convention............................................................................................... 3

      B.    Plaintiffs Lose Their Preliminary Injunction Request in Ingham County
           Circuit Court and Then File This Lawsuit, Seeking the Same Relief.................. 3

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT ...................................................................................................... 8

I.      PLAINTIFFS' CLAIMS ARE MOOT, AND THIS COURT CONSEQUENTLY
       LACKS JURISDICTION TO HEAR THIS DISPUTE...................................... 8

II.    PLAINTIFFS' CLAIMS PRESENT A NONJUSTICIABLE INTRAPARTY
       DISPUTE....................................................................................... 9

III.   PLAINTIFFS' CLAIMS ARE BARRED BY LACHES ............................... 10

IV.   PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR
       RELIEF....................................................................................... 15

      A.    Defendants Did Not Act Under Color of State Law, and Plaintiffs' Section
           1983 Claims Fail on Their Face........................................................ 15

      B.    Plaintiffs Have Not Alleged a Plausible Breach of MDP's Bylaws ................... 17

      C.    Plaintiffs Have Not Alleged a Cognizable Breach of the Michigan
           Constitution........................................................................... 19

      D.    The MDP Is Not Subject to Michigan's Nonprofit Corporation Act.................. 20

CONCLUSION.................................................................................................. 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ....................................................................................6

*Acosta v. Democratic City Comm.*,
288 F. Supp. 3d 597 (E.D. Pa. 2018) ......................................................................16

*Am. Indep. Party v. Austin*,
420 F. Supp. 670 (E.D. Mich. 1976) .......................................................................10

*Am. Indep. Party of Mich. (Morse-Smith Faction) v. Sec'y of State*,
247 N.W.2d 17 (Mich. 1976) ...........................................................................2, 9, 10

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) .....................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................6, 7

*Banchy v. Republican Party of Hamilton Cty.*,
898 F.2d 1192 (6th Cir. 1990) .................................................................................16

*Bank of Am., NA v. First Am. Title Ins. Co.*,
878 N.W.2d 816 (Mich. 2016) .................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................6, 7

*Center for Bio-Ethical Reform v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) .....................................................................................7

*Crookston v. Johnson*,
841 F.3d 396 (6th Cir. 2016) ...................................................................................12

*Davis v. Sec'y of State*,
--- N.W.3d ----, 2023 WL 3027517 (Mich. Ct. App. 2023).............................12, 14

*Detroit Unity Fund v. Whitmer*,
819 F. App'x 421 (6th Cir. 2020) ............................................................................14

*Detroit Unity Fund v. Whitmer*,
No. 20-12016, 2020 WL 6580458 (E.D. Mich. Aug. 17, 2020)..............................12

*Federspiel v. Ohio Republican Party State Cent. Comm.*,
867 F. Supp. 617 (S.D. Ohio 1994) .........................................................................16

ii

*Gelineau v. Johnson,*
   896 F. Supp. 2d 680 (W.D. Mich. 2012) ........................................................14

*Gelineau v. Johnson,*
   904 F. Supp. 2d 742 (W.D. Mich. 2012) ........................................................13

*Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.,*
   87 F.4th 743 (6th Cir. 2023.............................................................................15

*Kennedy v. Benson,*
   --- F. Supp. 3d ----, 2024 WL 4231578 (E.D. Mich. Sept. 18, 2024), *aff'd*, No.
   24-1799, 2024 WL 4327046 (6th Cir. Sept. 27, 2024) ...................................13

*Kennedy v. Sec'y of State,*
   --- N.W.3d ----, 2024 WL 4125710 (2024)....................................................13

*King v. Whitmer,*
   505 F. Supp. 3d 720 (E.D. Mich. 2020)..................................................8, 9, 11

*Lansing v. City of Memphis,*
   202 F.3d 821 (6th Cir. 2000) ..........................................................................15

*League of Women Voters of Ohio v. Brunner,*
   548 F.3d 463 (6th Cir. 2008) ............................................................................6

*Libertarian Party of Ohio v. Husted,*
   831 F.3d 382 (6th Cir. 2016) ..........................................................................16

*Memphis A. Philip Randolph Inst. v. Hargett,*
   2 F.4th 548 (6th Cir. 2021) ...............................................................................8

*Mich. Chamber of Com. v. Land,*
   725 F. Supp. 2d 665 (W.D. Mich. 2010) ........................................................11

*New Albany Tractor v. Louisville Tractor,*
   650 F.3d 1046 (6th Cir. 2011) ..........................................................................7

*Nykoriak v. Napoleon,*
   964 N.W.2d 895 (Mich. Ct. App. 2020) ....................................................13, 14

*O'Brien v. Brown,*
   409 U.S. 1 (1972)....................................................................................2, 9, 10

*Purcell v. Gonzalez,*
   549 U.S. 1 (2006)............................................................................................12

*Smith v. Allwright,*
   321 U.S. 649 (1944) ........................................................................................16

*Thomas v. City of Memphis, Tenn.*,
    996 F.3d 318 (6th Cir. 2021) ...........................................................................6

*United States v. City of Loveland, Ohio*,
    621 F.3d 465 (6th Cir. 2010) ..........................................................................11

*Watermark Senior Living Ret. Comms., Inc. v. Morrison Mgmt. Specialists*,
    905 F.3d 421 (6th Cir. 2018) ...........................................................................7

*West v. Atkins*,
    487 U.S. 42 (1988) ........................................................................................15

## Constitutions

Mich. Const. Art. II § 4(1)(b) ...............................................................................8, 12

Mich. Const. Art. II § 4(1)(h) ...............................................................................8, 12

Mich. Const. Art. VIII § 5 ...................................................................................19, 20

## Statutes

42 U.S.C. § 1983 ......................................................................................................5

Mich. Comp. Laws § 168.283 .................................................................................3

Mich. Comp. Laws § 168.648 .............................................................................8, 11

Mich. Comp. Laws § 168.710 .............................................................................8, 11

Mich. Comp. Laws § 168.711 .............................................................................8, 12

Mich. Comp. Laws § 168.713 .............................................................................8, 12

Mich. Comp. Laws § 168.759a(5) .......................................................................8, 12

Mich. Comp. Laws § 169.211(6) ...........................................................................20

Mich. Comp. Laws § 450.2487 ..............................................................................20

## Court Rules

Fed. R. Civ. P. 8(a)(2) ..........................................................................................6, 7

Fed. R. Civ. P. 12(b)(1) .........................................................................................6, 9

Fed. R. Civ. P. 12(b)(6) ..........................................................................6, 7, 15, 19

**Other Authorities**

8A Mich. Civ. Jur. Elections § 20......................................................................................9

## <u>INTRODUCTION</u>

This is Plaintiffs' *second* lawsuit attempting to invalidate the results of the vote taken at the Michigan Democratic Party ("MDP")'s August 24, 2024 convention for the MDP's two nominations for Regents of the University of Michigan and to place their preferred candidate on the ballot.  The Ingham County Circuit Court already denied Plaintiffs' request for injunctive relief seeking an audit and recount of those convention results, concluding that Plaintiffs' claims presented a nonjusticiable intraparty dispute.  After the Michigan Court of Appeals denied review, Plaintiffs ginned up flimsy federal constitutional claims to get a second bite at the apple in this Court.

As even Plaintiffs acknowledge, it is too late for this Court to provide any relief that could change the November 2024 general election ballots, which have already been printed, finalized, and made available for distribution to overseas and absentee voters, and which are already being voted and returned to local clerks' offices by those voters.  Indeed, the election is less than a month away, and early voting starts as soon as next Saturday in some Michigan jurisdictions.  Thus, none of the relief sought by Plaintiffs can have any practical effect.  Plaintiffs' lawsuit is consequently moot, as they cannot identify any redressable harm.  In addition to being moot, Plaintiffs' claims are also barred by laches, as they waited two-and-a-half weeks after the August 24 nominating convention to file this lawsuit.

Further, Plaintiffs' Section 1983 claims are entirely baseless.  As a matter of law, neither the MDP nor its officers—all of whom are private actors—acted under color of state law in administering the internal party nominating convention on August 24.  Nor do Plaintiffs allege with any plausibility or specificity any manner in which the MDP or its officers supposedly violated their constitutional rights—Plaintiffs simply allege that the convention vote did not

comply with MDP's Bylaws and then label it a constitutional violation.  But Plaintiffs have failed even to allege a cognizable violation of the Bylaws, let alone a constitutional problem.

Plaintiffs' lawsuit instead depends on their contrived post-hoc theory that the MDP should have used a different voting method at the convention for its nominations for Regents of the University of Michigan.  But that "slate" voting method encouraged by Plaintiffs, under the MDP's voting rules, applies only to internal party positions and has *never* been used to determine convention nominations for partisan general election positions.  Once the veneer on their conjured-up constitutional claims is stripped away, Plaintiffs are left with an intraparty dispute over convention voting procedures—precisely the type of dispute the Michigan Supreme Court and United States Supreme Court held to be nonjusticiable in *American Independent Party of Michigan (Morse-Smith Faction) v. Secretary of State*, 247 N.W.2d 17 (Mich. 1976), and *O'Brien v. Brown*, 409 U.S. 1 (1972), respectively.

Ultimately, Plaintiffs seek: (a) production of voting data that Plaintiffs already have and which Plaintiffs are, in any event, not legally entitled to demand under the Bylaws or any other authority; (b) a recount and audit of the Regents vote, despite the absence of any provision in MDP's Bylaws (or any statute or constitution, for that matter) permitting or requiring a recount or audit; (c) a declaration that the MDP violated its Bylaw in connection with the University of Michigan Regents nomination vote, despite the fact that any such declaration would be of no legal import; and (d) a Court order directing the MDP to "implement [unspecified] corrective measures" that are again not required by the Bylaws or any other legal authority.  In short, Plaintiffs lack any cognizable legal claim that could warrant any of the relief sought.  While Plaintiffs may be disappointed that Plaintiff Arraf did not prevail at her Party's convention to be a candidate for Regent, they cannot waste this Court's (or Defendants') time and resources with a baseless lawsuit

that even Plaintiffs admit cannot result in a different outcome.  Plaintiffs' claims must be dismissed.

## **FACTUAL AND PROCEDURAL BACKGROUND**

**A.     The MDP Conducts Voting for Two Nominations for Regents of the University of Michigan During the August 24, 2024 Nominating Convention.**

Plaintiff Huwaida Arraf was one of three candidates who ran for the MDP's two nominations for Regents of the University of Michigan on the general election ballot in 2024. (Compl. ¶¶ 1, 17, ECF No. 1, PageID.2-3, 6).  During the MDP's August 24, 2024 nominating convention, credentialed voters voted for the two nominations for Regents of the University of Michigan.  (Compl. ¶¶ 27-28, ECF No. 1, PageID.9-10).  After voting was complete and the votes had been tallied, the other two candidates won the two nominations for Regents of the University of Michigan.  (Compl. ¶ 40, ECF No. 1, PageID.12).  Accordingly, pursuant to its obligations under Mich. Comp. Laws § 168.283, the MDP certified the names of the other two candidates to the Secretary of State for the November ballot.  (Compl. ¶ 104, ECF No. 1, PageID.25).

The MDP also provided all three candidates for Regents with the raw voting data on August 25, 2024.  (L. Barnes Email, ECF No. 1-5).  Plaintiff Arraf subsequently filed an appeal within MDP regarding the Regents vote pursuant to Article 12 of the Rules of the Michigan Democratic Party (the "Bylaws"), last revised in 2018.  (Arraf Appeal, ECF No. 1-12).  That appeal was denied by the Appeals Committee at a meeting held on Sunday, September 22, 2024.

**B.     Plaintiffs Lose Their Preliminary Injunction Request in Ingham County Circuit Court and Then File This Lawsuit, Seeking the Same Relief.**

Plaintiffs waited nearly two weeks after the convention to seek court action.  On September 5, 2024—the day before State law required the Michigan Secretary of State to finalize statewide ballots for the November 5, 2024 election—Plaintiffs commenced a lawsuit in Ingham County Circuit Court against the MDP, Lavora Barnes, and the Secretary of State, claiming that MDP

should have used Plaintiffs' preferred method of "slate" voting procedures (instead of majority vote procedures) to determine the nominations for Regents of the University of Michigan (even though they do not apply); that the MDP allowed voters to vote in the election who were not properly credentialed; that the MDP refused to release the raw voting data; and that the MDP's State Central Committee improperly ratified the results of the election. (*See* Ingham Cty. Compl., ECF No. 3-2). Plaintiffs asserted four claims: (1) for a declaratory judgment finding that MDP breached its Bylaws; (2) for injunctive relief requiring MDP to audit or investigate the election results and/or recount the votes; (3) for breach of contract (the MDP Bylaws); and (4) for violation of Michigan's Nonprofit Corporation Act. (*See id.*).

Plaintiffs sought an ex parte temporary restraining order and preliminary injunction: (a) ordering the MDP to conduct an investigation or audit of the Regents vote; (b) ordering the MDP to conduct a recount; (c) ordering the MDP to expedite Plaintiff Arraf's internal MDP appeal; and (d) prohibiting the Secretary of State from finalizing the general election ballot until the MDP's investigation or audit was completed. (*See* Ingham Cty. Mot., ECF No. 3-3).

The circuit court held a show cause hearing on Friday, September 6, 2024. Over the course of more than four hours, the circuit court heard oral argument from the parties' attorneys and received testimony from Plaintiff Arraf, Plaintiff Kirby, and witness Liano Sharon (who submitted the affidavit attached as Exhibit 19 to Plaintiffs' Complaint here (ECF No. 1-20)). The circuit court, after careful consideration, then issued an order denying Plaintiffs' motion for a temporary restraining order and preliminary injunction. Plaintiffs filed an application for leave to appeal to the Michigan Court of Appeals, which the court denied on September 9, 2024 (ECF No. 3-6).

Two days later, Plaintiffs filed this lawsuit, alleging the same claims for breach of contract (Count V) and violation of Michigan's Nonprofit Corporation Act (Count VI), but adding claims

for violation of the Michigan Constitution (Count IV) and 42 U.S.C. § 1983 (First Amendment –
Count I, Due Process – Count II, and Equal Protection – Count III).  In support of their new federal
claims, Plaintiffs allege only that the Regents vote at the August 24 convention was "marred" by
"irregularities" and that Plaintiffs "experienced voter intimidation and voter suppression" in
unspecified ways.  (Compl. ¶¶ 128, 132, 137-38, ECF No. 1, PageID.32-34).  Plaintiffs' Complaint
does not specify how any of the Defendants purportedly acted under color of state law for purposes
of Section 1983 or in what acts each of them engaged.

On September 12, 2024, Plaintiffs filed a motion for a preliminary injunction and order to
show cause (ECF No. 3).  Plaintiffs asked this Court to compel the MDP to: (A) either (1)
"[t]abulate" the votes for Regents of the University of Michigan nominations "using the slate
tabulation method," *i.e.*, conduct a recount using Plaintiffs' preferred (but inapplicable) voting
procedures, and "[i]mmediately communicate the results of the retabulation to the Secretary of
State", or (2) provide Plaintiffs with "the raw voting data" and "a list of the MDP members
properly credentialed to vote" during the convention; (B) "cooperate with Plaintiffs to audit the
data"; and (C) "[i]mmediately communicate the results of the audit to the Secretary of State."
(ECF No. 3, PageID.182-183).  Defendants filed a response opposing Plaintiffs' request for
preliminary injunctive relief.  Plaintiffs subsequently withdrew that motion on October 4, 2024,
conceding that "the last possible date to correct the November general election ballots has passed
[. . . Saturday, September 21, 2024], and general election ballots have already been mailed out,"
and that "Plaintiffs' request for a preliminary injunction is now moot."  (Not. of Withdrawal ¶ 16,
ECF No. 13, PageID.670 (brackets in original)).

## STANDARD OF REVIEW

A plaintiff's complaint may be dismissed for "lack of subject-matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Mootness is a jurisdictional issue because it "implicates Article III's 'case or controversy' requirement." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). "Federal courts are prohibited from rendering decisions that 'do not affect the rights of the litigants.'" *Thomas v. City of Memphis, Tenn.*, 996 F.3d 318, 323 (6th Cir. 2021). "A case becomes moot 'when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome.'" *Id.*

Further, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must assert sufficient factual allegations to establish that their claims are "plausible on [their] face," *i.e.,* there must be more than the mere possibility that Defendants acted unlawfully. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also id.* at 555 ("A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Although courts generally accept the complaint allegations as true, this rule is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, courts first disregard all conclusory statements and allegations in the complaint. This is because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79 (internal citation omitted). Thus, allegations based upon "information and belief" should be disregarded because they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a

complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

Courts then review the remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief.  For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendants' liability" or that a violation is "conceivable." *Iqbal*, 556 U.S. at 680 (quoting *Twombly,* 550 U.S. at 567).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

The Sixth Circuit has explained that "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011).  In other words, a "plaintiff must allege specific facts [to support a plausible claim] even if those facts are only within the head or hands of the defendants.  The plaintiff may not use the discovery process to obtain these facts after filing suit.  The language of *Iqbal,* 'not entitled to discovery,' is binding on the lower federal courts." *Id.*  Accordingly, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011); *see also id.* at 368 (noting that following *Twombly* and *Iqbal*, it is "well settled" that a complaint must contain sufficient factual allegations to plausibly state a claim for relief).

When reviewing motions under Rule 12(b)(6), the Court may consider matters of public record and items that appear in the record of the case.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *Watermark Senior Living Ret. Comms., Inc. v. Morrison Mgmt. Specialists*, 905 F.3d 421, 425 (6th Cir. 2018).

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS' CLAIMS ARE MOOT, AND THIS COURT CONSEQUENTLY LACKS JURISDICTION TO HEAR THIS DISPUTE.**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *King v. Whitmer*, 505 F. Supp. 3d 720, 730 (E.D. Mich. 2020) (internal quotation marks omitted). "An actual, ongoing controversy exists when there is a genuine dispute between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557-58 (6th Cir. 2021) (cleaned up). "If the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, then the case is moot and the court has no jurisdiction." *Id.* (cleaned up).

Here, as Plaintiffs have admitted to this Court, ballots for the November 2024 general election have already been finalized, proofed, printed, delivered to local clerks, and made available for absent voters as well as sent to military and overseas voters. Mich. Const. Art. II § 4(1)(b), (h); Mich. Comp. Laws §§ 168.648, 168.710, 168.711, 168.713, 168.759a(5). (*See* Not. of Withdrawal ¶ 16, ECF No. 13, PageID.670) (conceding that last day to change ballots elapsed weeks ago and relief sought in Plaintiffs' preliminary injunction motion is consequently moot). Some Michigan voters have had their ballots for two weeks and have already voted those ballots and returned them to their local clerks' offices. And early in-person voting starts as soon as next week (Saturday, October 19) in some jurisdictions, including Detroit, Michigan's largest city.

This Court cannot provide any effective relief to Plaintiffs—any "audit" of the Regents vote from the nominating convention or "communicat[ion] . . . to the Secretary of State" regarding the results of that audit would be of no import since ballots have already gone out to the public and, indeed, are in the process of being voted and returned. (*See* Compl., ECF No. 1, PageID.40). Any declaratory relief relative to the August 24 nominating convention would likewise lack any

practical effect.  (*See* Compl., ECF No. 1, PageID.40-41).  Since the relief Plaintiffs seek would not actually impact their legal rights, their claims are moot.  *See, e.g.*, *King*, 505 F. Supp. 3d at 730-31 (concluding that lawsuit seeking to decertify 2020 election and direct state to certify opposing candidate as winner of presidential election was moot because results had been canvassed and certified).

In short, at this point, nothing in this case will result in any changes to the ballot, which is Plaintiffs' ultimate goal.  None of the relief sought by Plaintiffs (including an audit or production of voting data) would have any practical effect on the outcome of the MDP's August convention vote or the November 2024 general election ballot. Plaintiffs' claims therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

## II.    PLAINTIFFS' CLAIMS PRESENT A NONJUSTICIABLE INTRAPARTY DISPUTE.

Plaintiffs' claims must also be dismissed because Plaintiffs have merely cloaked a nonjusticiable intraparty dispute as a constitutional and contract claim.  It is well established that "[a]s a general rule, the courts will not interfere with the internal affairs of a political party or determine a controversy within the organization."  8A Mich. Civ. Jur. Elections § 20.  In *O'Brien v. Brown*, 409 U.S. 1 (1972), for example, the United States Supreme Court stayed lower court decisions concluding that a national political party's credentialing committee had violated the constitutional rights of various delegates to attend the national convention.  The Court specifically noted that "[i]t has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated."  *Id.* at 4.

The Michigan Supreme Court confirmed that principle in *American Independent Party of Michigan (Morse-Smith Faction) v. Secretary of State*, 247 N.W.2d 17 (Mich. 1976).  There, two

factions of the party held their own conventions, nominated their own sets of candidates, and sought to have their respective candidates included on the ballot.  *Id.* at 17-18.  The Director of Elections advised that he would only accept for the ballot one set of candidates approved by both factions.  *Id.* at 17.  On appeal, the Michigan Supreme Court held that "[t]he Director of Elections correctly left to the American Independent Party the resolution of the intra-party dispute."  *Id.* at 19, citing *O'Brien*, 409 U.S. at 4; *see also id.* ("[T]he political processes should function free from judicial supervision unless infringement of constitutional rights is alleged.") (internal quotation marks omitted); *Am. Indep. Party v. Austin*, 420 F. Supp. 670, 673 (E.D. Mich. 1976) ("It would not be proper for a federal court to select a slate of candidates.").

In this case, Plaintiffs' dispute is fundamentally about the internal workings and affairs of the MDP, specifically, the voting methodology at its August 2024 nominating convention. Plaintiffs take issue only with whether the MDP properly followed its internal procedures and voting rules in administering the voting for candidates for Regents of the University of Michigan, and allege that these supposed procedural violations impacted the outcome of the vote.  (*See* Compl. ¶¶ 72-114, ECF No. 1, PageID.19-27).  The question of who appears on a general election ballot as the nominees endorsed by a political party is fundamentally a political question that must be left to the party's internal processes to determine—that is the precise proposition for which *American Independent Party of Michigan* stands.   In other words, this case presents a quintessential intraparty dispute that the courts have long held should be left to the internal mechanisms and resolution of the political party.  *E.g.*, *Am. Indep. Party of Mich.*, 247 N.W.2d 17. Plaintiffs' claims must be dismissed on that basis.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY LACHES.

Additionally, Plaintiffs also waited too long to bring their claims in this Court, and their claims are consequently barred by laches.  "[I]t is well established that in election-related matters,

extreme diligence and promptness are required." *Michigan Chamber of Com. v. Land*, 725 F. Supp. 2d 665, 681 (W.D. Mich. 2010) (internal quotation marks omitted). "An action may be barred by the doctrine of laches if: (1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant is prejudiced by this delay." *King*, 505 F. Supp. 3d at 731 (concluding that § 1983 lawsuit brought by voters following 2020 presidential election based on alleged "widespread voter irregularities and fraud in the processing and tabulation of votes and absentee ballots" was barred by laches); *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010).

Here, the MDP's nominating convention for the November general election occurred on Saturday, August 24, 2024. Yet Plaintiffs inexplicably waited nearly three weeks, until Wednesday, September 11, 2024, to file this lawsuit (after first losing in state court), and offer no explanation as to why. Plaintiffs undisputedly knew as of the evening of August 24 that Plaintiff Arraf had not won one of the two nominations for Regents. (Compl. ¶ 40, ECF No. 1, PageID.12). And Plaintiffs were advised as of August 25, 2024, that their only internal recourse under MDP's Bylaws was through an appeal, which would take up to 45 days. (Compl. ¶¶ 47-48, ECF No. 1, PageID.13).

Even with that knowledge, Plaintiffs waited until the last minute while critical deadlines for the November 2024 election fast approached. By statute, the Secretary of State was required to "send to the county clerk of each county a notice in writing of such primary or election, specifying in such notice the federal, state and district offices for which candidates are to be nominated or elected" no later than Friday, September 6, 2024. Mich. Comp. Laws § 168.648. Proof copies of the November ballot were required to be available in county clerks' offices for public review by Monday, September 8, 2024. Mich. Comp. Laws § 168.710. Proof copies of the ballot were also required to be concurrently mailed to candidates to review and identify any errors,

which candidates had five business days to do.  Mich. Comp. Laws § 168.711.  Absent voter ballots were then required to be delivered to the county clerk at least 47 days before the election, *i.e.*, by Thursday, September 19, 2024, Mich. Comp. Laws § 168.713, and local clerks must have sent absent voter ballots to military and overseas voters with applications on file no later than Saturday, September 21, 2024, Mich. Comp. Laws § 168.759a(5); Mich. Const. Art. II § 4(1)(b).  Moreover, under the Michigan Constitution, absent voter ballots must have been available to domestic electors as of Thursday, September 26, 2024.  Mich. Const. Art. II § 4(1)(h).

Simply put, by the time Plaintiffs filed this lawsuit, it was and is too late for the Court to provide effective relief.  As Plaintiffs acknowledge, ballots for the November 2024 general election have now been finalized, proofed, printed, and made available to voters.  (*See* Not. of Withdrawal ¶ 16, ECF No. 13, PageID.670).  All of the relief sought in Plaintiffs' Complaint is calculated toward establishing that Plaintiff Arraf won one of the two nominations for Regents and should have been placed on the November 2024 ballot.  Plaintiffs waited too long to bring that claim, and it is functionally impossible for any changes to be made to the ballots at this point (even if the Defendants somehow had control over that process, which they do not).

Courts commonly apply laches in similar cases challenging a candidate's eligibility for elective office, since "legal challenges that affect elections are especially prone to causing profound harm to the public and to the integrity of the election process the closer in time those challenges are made to the election."  *Davis v. Sec'y of State*, --- N.W.3d ----, 2023 WL 3027517, at *6 (Mich. Ct. App. 2023); *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.") (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006)).

Just a few weeks ago, another federal court in Michigan denied a candidate's request to be removed from the November 2024 ballot, holding that his claims were likely barred by laches. *Kennedy v. Benson*, --- F. Supp. 3d ----, 2024 WL 4231578, at *3, *4 (E.D. Mich. Sept. 18, 2024), *aff'd*, No. 24-1799, 2024 WL 4327046 (6th Cir. Sept. 27, 2024).  There, the candidate's claims "became ripe on August 29, 2024, when [the Secretary of State] made her final decision to reject Plaintiff's notice of withdrawal," but he waited until September 10, 2024, to file a lawsuit in federal court.  *Id.* at *4.  The court concluded that "Plaintiff's delay in bringing [this case] was unreasonable and could work to render inefficient the election process by causing missed deadlines and costing the State of Michigan hundreds of thousands of dollars in reprinting costs."  *Id.  See also Kennedy v. Sec'y of State*, --- N.W.3d ----, 2024 WL 4125710, at *3 (2024) (Welch, J., concurring) (noting prejudice caused by same candidate waiting until two weeks before ballot printing deadline to seek to have name removed from ballot); *Gelineau v. Johnson*, 904 F. Supp. 2d 742, 745 (W.D. Mich. 2012) ("Yet Plaintiffs showed no diligence in asserting their rights until a mere 40 days before the election, after the state began printing ballots and indeed after their first motion to modify the ballots failed. The prejudice from this delay is . . . great[] . . . . To the extent they seek to change the State's ballots, their claim fails under the doctrine of laches.").

Michigan's Court of Appeals reached the same conclusion in *Nykoriak v. Napoleon*, 964 N.W.2d 895 (Mich. Ct. App. 2020), where the plaintiff filed an action seeking to disqualify the incumbent candidate based on an allegedly defective affidavit of identity.  The affidavit had been filed on April 15, 2020, and the plaintiff timely filed objections with the Wayne County Clerk and Board of Election Commissioners, then waited "another 24 days" before filing his lawsuit.  *Id.* at 903.  The Court of Appeals affirmed that laches barred the plaintiff's claim, since the plaintiff had not convincingly explained his delay in filing suit—instead alleging only that, "during this time,

he considered his options and hired counsel, who investigated his claim, conducted research, and drafted and filed his pleadings"—and the Wayne County defendants had materially changed their position in the meantime, since ballots had been printed and delivered to local clerks. *Id.* at 903-04. *See also Detroit Unity Fund v. Whitmer*, 819 F. App'x 421 (6th Cir. 2020) (affirming district court's denial of preliminary injunction seeking to prevent enforcement of filing deadline for local ballot initiatives, where district court found that defendants would be prejudiced because "proofing and printing ballots for the November election" was due to start in a few weeks, *Detroit Unity Fund v. Whitmer*, No. 20-12016, 2020 WL 6580458, at *5 (E.D. Mich. Aug. 17, 2020)).

The Court should reach the same conclusion here and hold that Plaintiffs' claims are barred by laches. Plaintiffs' claims arose on August 24, 2024, but Plaintiffs waited 18 days to file this suit, until ballot finalization, printing, and distribution deadlines were imminent, with no articulated reason for that delay. This clear "'lack of diligence'" warrants application of laches. *Gelineau v. Johnson*, 896 F. Supp. 2d 680, 683 (W.D. Mich. 2012). Further, the MDP, its members, and the general public would be prejudiced by Plaintiffs' delay. MDP long ago certified the names of the Regents candidates to the Secretary of State, ballots have been printed and made available to voters two weeks ago, and those ballots are already being voted by absentee voters and returned to clerks' offices. Plaintiffs' requested relief would require the MDP to expend significant resources undertaking an "audit" that could have no practical effect since ballots have already been printed, made available to the public, and are in the process of being voted. Plaintiffs' claims are consequently barred by laches. *See Davis*, 2023 WL 3027517, at *6 ("'Courts can reasonably endeavor to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials.'").

## IV.     PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

Even if Plaintiffs could get around those three critical threshold issues, they still fail to state a plausible claim, and their Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### A.     Defendants Did Not Act Under Color of State Law, and Plaintiffs' Section 1983 Claims Fail on Their Face.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). As a matter of law, MDP and its officers (Barnes and Jensen)—all of whom are private actors— did not act under color of state law for purposes of Section 1983.  Initially, as even Plaintiffs admit, the MDP "is a political party" (Compl. ¶ 4, ECF No. 1, PageID.3), not a government agency; neither Barnes nor Jensen is a government agent or employee; and it is not clear under what state law Plaintiffs contend any of the Defendants were acting in this case.  *See Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 757 (6th Cir. 2023) (requiring that defendant's actions "'so approximate state action that they may be fairly attributed to the state'" for private actor to be subject to § 1983).[1]

---

[1] Courts use three tests to evaluate the closeness of the relationship.  "The public function test requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).  "The state compulsion test requires that a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Id.* at 829.  "Under the nexus test, 'the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 830.  Plaintiffs' Complaint contains no allegations that would meet any of these three tests here with respect to any Defendant.

Outside the very limited context where political parties are expressly delegated authority by state legislatures to run elections, courts have regularly rejected this type of Section 1983 claim. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 396 (6th Cir. 2016) ("Here, the Ohio Republican Party has not been assigned an integral part in the election process that is usually performed by the state. By filing a protest against a nomination petition under this statute—or having an agent file a protest—the Ohio Republican Party is not engaging in state action.") (cleaned up); *Banchy v. Republican Party of Hamilton Cty.*, 898 F.2d 1192, 1196 (6th Cir. 1990) (concluding that plaintiffs who "were not afforded the opportunity to vote for their respective ward chairman as provided for in the party constitution" could not bring a Section 1983 claim against their political party because party was conducting its internal operations); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 632 (E.D. Pa. 2018) ("Plaintiffs have failed to plausibly plead that the Democratic Committee participated in joint action with the state or exercised powers traditionally reserved to the state. . . . Although the Democratic Party's role is defined by the Pennsylvania Election Code, the state did not assign the Democratic Committee an integral role in the special election that is usually performed by the state."); *Federspiel v. Ohio Republican Party State Cent. Comm.*, 867 F. Supp. 617, 622 (S.D. Ohio 1994) (concluding, where "Plaintiffs allege that the Party conducted its election of officers in a manner that was unverifiable and in violation of its own constitution," that statutory authorization for state central committee to choose between "two slates of officers" elected to county committee did not create state action). *Compare with Smith v. Allwright*, 321 U.S. 649, 663-65 (1944) (addressing situation where a Black voter who was eligible to vote under Texas law was denied the right to participate in a primary election held by a political party and concluding that, since "[p]rimary elections [in Texas] are conducted by the

party under state statutory authority" and political party selected the election officials and canvassed the primary returns, party engaged in state action).

Further, Plaintiffs have entirely failed to put forward any allegations plausibly suggesting that any Defendant has violated any Plaintiff's constitutional rights. Plaintiffs' Complaint simply includes a laundry list of the "irregularities" that Plaintiffs believe occurred during the August 24th convention. (*See* Compl. ¶¶ 128, 132, 138, ECF No. 1, PageID.31-34). None of these purported "irregularities"—for example, "MDP staff making it difficult for many of Arraf's supporters to credential," unspecified actors "[p]reventing Arraf's campaign from being present to monitor the vote tabulation," and "[e]rrors in the counties listed for a number of voters" (Compl. ¶ 128, ECF No. 1, PageID.31)—plausibly rises to the level of a federal constitutional violation, even if Plaintiffs could theoretically bring a Section 1983 claim against Defendants. Counts I through III are therefore subject to dismissal on that additional basis.

### B.   Plaintiffs Have Not Alleged a Plausible Breach of MDP's Bylaws.

Even if Plaintiffs were to demonstrate that their breach of contract claim is anything more than a nonjusticiable intraparty conflict, they have failed to state a plausible claim for breach of contract, which requires Plaintiffs to allege "that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016). Assuming without conceding that MDP's Bylaws constitute a contract, Plaintiffs have not alleged any actionable breach.

Regarding Plaintiffs' allegations that the MDP should have used the slate voting method instead of the majority voting method for the Regents vote, Plaintiffs rely on MDP's voting rules (not its Bylaws) and do not allege that these voting rules constitute a contract. (*See* Compl. ¶¶ 72-79, ECF No. 1, PageID.19-20). And Plaintiffs do not identify any provision of the Bylaws

requiring slate voting for candidates for partisan offices to appear on a general election ballot.  (*See id.*).  To the contrary, the voting rules make clear that slate voting is used only for **internal** multiple-position offices within the MDP, "such as County or District Executive Committee members, delegates or alternates to the State Central Committee, delegates or alternates to the Democratic National Convention, or members of the Democratic National Committee," as indicated in Sections 2.1, 2.5, and 6 of the voting rules.  (Voting Rules §§2.1, 2.5, 6, ECF No. 1-4, PageID.63, 65-66).

With respect to MDP's alleged refusal to release "raw" voting data from the election, Plaintiffs do not identify any provision of the Bylaws requiring MDP to provide this data.  (*See* Compl. ¶¶ 95-114, ECF No. 1, PageID.23-27).  MDP cannot violate an obligation that does not exist.  And, as Plaintiffs admit, MDP has already provided Plaintiff Arraf with the raw voting data from the 2024 convention vote for the candidates for University of Michigan Regents, as requested.  (Compl. ¶ 97, ECF No. 1, PageID.23).

Regarding Plaintiffs' assertion that improperly credentialed voters were allowed to vote during the convention, Plaintiffs' allegations amount to nothing more than speculation, based on a purported numerical discrepancy in the number of voters.  (*See* Compl. ¶¶ 80-94, ECF No. 1, PageID.22-23).  And Plaintiffs fail to plausibly connect any purported discrepancy in the number of credentialed voters to their alleged harm of their preferred candidate not winning one of the nominations.  (*See id.*).  Further, Plaintiffs have submitted additional evidence that flatly refutes this claim.  As explained in the written statement provided by Voatz (the third-party vendor that counted and confirmed the votes) and submitted by Plaintiffs regarding their preliminary injunction motion, "[a]ll 1422 convention delegates whose votes were successfully recorded in the system before voting closed . . . on August 24th, 2024, were credentialed in person at the Lansing

Center on that date."  (ECF No. 10-1, PageID.404).  While the number of credentialed voters was announced during the convention as 1,248, at that time, "several delegates were still waiting in helpdesk queues and had not yet completed their technical credentialing through the mobile app or iPad terminals. A total of 1488 delegates were eventually credentialed, of which 1422 voted." (ECF No. 10-1, PageID.404).

As to Plaintiffs' contentions regarding whether a quorum was present during the State Central Committee ratification meeting, Plaintiffs are again merely speculating that a quorum was not actually present.  (*See* Compl. ¶¶ 89-94, ECF No. 1, PageID.22-23).  And Plaintiffs again fail to plausibly allege that they were harmed by the purported absence of a quorum at this meeting or that the outcome would have been different had a quorum been present.

Finally, Plaintiffs do not cite to any provision of the Bylaws that would allow them to seek an "audit" of the Regents vote, nor any of the other actions sought in their prayer for relief.  (*See* Compl., ECF No. 1, PageID.39-41).  That is because the Bylaws do not require or provide for any of the sought-after relief.  The unavailability of relief under the Bylaws underscores the futility of Plaintiffs' claims.

For all of those reasons, Count V is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

### C.      Plaintiffs Have Not Alleged a Cognizable Breach of the Michigan Constitution.

Plaintiffs' claim for violation of the Michigan Constitution (Count IV) involves Article VIII, Section 5, which provides that "[t]he board of each institution [the University of Michigan, Michigan State University, and Wayne State University] shall consist of eight members who shall hold office for terms of eight years and who shall be elected as provided by law."  Mich. Const. Art. VIII § 5.  (*See* Compl. ¶¶ 57, 142, ECF No. 1, PageID.16, 35).  Plaintiffs do not explain how

precisely they think Defendants—even if they were deemed state actors (which they are not)—have violated this provision, and that absence of factual support is sufficient to warrant dismissal.

Indeed, Plaintiffs' theory appears to be that if, in their view, there is any irregularity at all in the process for nominating and electing board members of any of these three institutions—no matter how trivial the legal issue or its nature—that automatically rises to the level of a constitutional violation under Article VIII, Section 5.  For example, under Plaintiffs' conceptualization, if a political party issues a notice of the convention voting procedures a day later than required by its bylaws, that would violate the Michigan Constitution.  Plaintiffs' novel, absurdly broad conception cannot be a viable legal claim.  Count IV must be dismissed.

### D.       The MDP Is Not Subject to Michigan's Nonprofit Corporation Act.

Finally, with respect to Plaintiffs' claim under the Michigan Nonprofit Corporation Act (Count VI), as a matter of law, the MDP simply is not a Michigan nonprofit corporation, and Plaintiffs are not "shareholder[s] or member[s] of record of a corporation" entitled to request records under Mich. Comp. Laws § 450.2487.  Rather, as Plaintiffs agree, the MDP is under the umbrella of the Democratic State Central Committee.  (Compl. ¶ 4, ECF No. 1, PageID.3).  The Democratic State Central Committee is organized as political party committees under state and federal campaign finance laws and registered with the Michigan Secretary of State and the Federal Election Commission.  *See* Mich. Comp. Laws § 169.211(6).[2]  Michigan's Nonprofit Corporation Act is wholly inapplicable here, and Count VI is subject to dismissal on that basis.

---

[2] See also MICH. SEC'Y OF STATE, Mich Comm Statement of Organization, *Mich Dem State Cent Comm*, available at https://cfrsearch.nictusa.com/committees/000380#documents (listing Democratic State Central Committee as "State Political Party" on Michigan campaign finance repository).

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in full with prejudice.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By: */s/Scott R. Eldridge*
      Scott R. Eldridge (P66452)
      Erika L. Giroux (P81998)
      120 N. Washington Square, Suite 900
      Lansing, Michigan  48933
      (517) 487-2070
      eldridge@millercanfield.com
      giroux@millercanfield.com
      *Attorneys for Defendants*

Dated: October 11, 2024

21

## CERTIFICATION PURSUANT TO LCivR 7.2(b)(ii)

The undersigned hereby certifies that, to the best of his knowledge, this Brief, in its entirety (exclusive of the cover page, table of contents, index of authorities, signature block, exhibits, affidavits, certificate of service, and this certification), contains 6,628 words (as checked with Microsoft Word's word-counting function).

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Miller, Canfield, Paddock and Stone P.L.C.

Dated: October 11, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system that will send notification of such filing upon all ECF filing participants.

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Miller, Canfield, Paddock and Stone P.L.C.

Dated: October 11, 2024

42800502.5/136081.00007