UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUWAIDA ARRAF, et al.,

    Plaintiffs,

v.

MICHIGAN DEMOCRATIC PARTY, et al.,

    Defendants.
_____/

Case No. 1:24-cv-933

Hon. Jane M. Beckering

**OPINION AND ORDER**

Plaintiffs allege federal and state-law claims challenging the integrity of the Michigan Democratic Party (the "MDP")'s election for two nominations for the University of Michigan Board of Regents. Pending before the Court is Defendants' Motion to Dismiss (ECF No. 16). For the following reasons, the Court grants the motion as to Plaintiffs' federal claims and dismisses the motion as moot as to Plaintiffs' state-law claims inasmuch as the Court declines to exercise supplemental jurisdiction over those claims.

**I. BACKGROUND**

On August 24, 2024, the MDP held the state nominating convention to nominate democratic candidates for the November 2024 general election. (Compl. ¶¶ 15, 18–19.) The convention was held in Lansing, Michigan, where hundreds of registered voters voted to elect the MDP's nominees for five statewide offices: the University of Michigan Board of Regents; Michigan State University Board; Wayne State University Board; State Board of Education; and the Michigan Supreme Court. (*Id.* ¶ 15.) The University of Michigan Board of Regents election featured three candidates for two spots—Huwaida Arraf, Shauna Ryder Diggs, and Denise Ilitch.

(*Id.* ¶¶ 17, 28, 94.) That night, after voting was completed and the votes had been tallied, the convention chair announced the results. (*Id.* ¶ 40.) For the University of Michigan Board of Regents election, she announced Diggs and Ilitch as the party's nominees. (*Id.* ¶¶ 40, 94.) Arraf "immediately communicated to Defendant Christine Jensen . . . that she did not accept the process or the announced results and wanted to lodge a challenge." (*Id.* ¶ 42.) Nonetheless, a couple days later, Defendants submitted Diggs and Ilitch to the Secretary of State "as the duly elected nominees for the University of Michigan Board of Regents." (*Id.* ¶ 104.)

Plaintiffs claim that the August 24, 2024 election was "marred by irregularities[,]" irregularities that "result[ed] in the disenfranchisement of Plaintiffs and other similarly situated voters." (*Id.* ¶¶ 20 & 61.) They allege that Defendants intimidated and harassed Arraf's supporters, falsely told Arraf's supporters that they did not have voting privileges, lost or otherwise missed data necessary for accurate tallying, and altered voter data without giving Arraf requisite oversight. (*Id.*)

Three challenges ensued. First, four days after the election, Arraf filed a petition with the MDP Appeals Committee, reporting her issues with the election and requesting that her appeal be expedited. (*Id.* ¶¶ 49, 107; Arraf MDP Appeal 1.) Defendants denied Arraf's request to expedite consideration of the appeal, prompting Arraf, Jennifer Kirby, and Madeleine Tocco to sue the MDP, Lavora Barnes (Chair of the Michigan Democratic Party), and Jocelyn Benson (Michigan's Secretary of State) in Ingham County Circuit Court. (Compl. ¶ 50; Ingham County Cir. Ct. Compl. 1.)

Their state court action—commenced nearly two weeks after the nomination election—sought declarative and injunctive relief relating to the election's "irregularities." (Ingham County Cir. Ct. Compl. 16–20.) They also sought an ex parte temporary restraining order and preliminary

2

injunction, requesting that the Court order the MDP "to conduct a full and transparent investigation or audit of the University of Michigan Regents vote-counting process," order the MDP to expedite Arraf's appeal and to prohibit "Defendant Benson from finalizing the general election ballot for printing. . . ." (ECF No. 3-3, PageID.336.)  The state court held a show cause hearing and, after hearing from Plaintiffs and Defendants, issued an order denying Plaintiffs' motion for injunctive relief, concluding that absent either an allegation of a statutory provision governing nominations for elections or a constitutional issue, Plaintiffs' claims appeared to fall into the category of a nonjusticiable intraparty dispute.  (Tr. of Show Cause Hr'g Mot. for TRO and/or Prelim. Inj., ECF No. 3-5, PageID.361–68.)   Plaintiffs filed an emergency motion for leave to file an interlocutory appeal, which the Michigan Court of Appeals denied (ECF No. 3-6, PageID.371).

Plaintiffs filed this action on September 11, 2024.  Plaintiffs claim that this Court has federal-question jurisdiction over their claims brought under 42 U.S.C. § 1983 and supplemental jurisdiction over their state-law claims.  (Compl. ¶¶ 7–9.)  Under § 1983, Plaintiffs allege that Defendants violated their First Amendment rights (Count I), their rights to due process (Count II), and their rights to equal protection of the laws (Count III).  Additionally, Plaintiffs allege that Defendants violated the Michigan Constitution (Count IV), are in breach of contract (Count V), and violated Michigan's Nonprofit Corporations Act (Count VI).  As for relief, they make multiple requests for injunctive and declarative relief as well as attorney's fees.  (Compl., PageID.39–41.)

A day after filing their Complaint, Plaintiffs filed an "Emergency Motion for Preliminary Injunction."  (ECF No. 3.)  This Court issued an Order, requiring Plaintiffs to complete service on Defendants and providing a briefing schedule.  Defendants subsequently filed an opposition brief. (ECF No. 11.)  In lieu of filing a reply, Plaintiffs withdrew the motion on October 4, 2024, conceding that their request for a preliminary injunction is moot.  (ECF Nos. 13, 15.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendants filed the pending motion to dismiss Plaintiff's Complaint (ECF No. 16). Plaintiffs filed a response brief. (ECF No. 22.) Defendants filed a reply. (ECF No. 23.) Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented. See W.D. Mich. LCivR 7.2(d).

## II. LEGAL STANDARDS

Rule 12(b)(1) authorizes a party to challenge by motion the Court's "lack of subject matter jurisdiction." Rule 12(b)(1) motions may challenge jurisdiction facially or factually. FED. R. CIV. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021); *Primus Grp., LLC v. Smith & Wesson Corp.*, 844 F. App'x 824, 826 (6th Cir. 2021). The plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception," thus, lack of subject matter jurisdiction is a fatal defect. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884)); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Rule 12(b)(6) authorizes a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). Specifically, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). The court views the complaint in the light most favorable to the plaintiff, accepting as true all well-pled factual allegations and drawing all reasonable inferences

4

in favor of the plaintiff. *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

#### A. Subject-Matter Jurisdiction

The Court begins by discussing those threshold questions that involve this Court's subject matter jurisdiction. While the Court finds that any of these jurisdictional issues, standing alone, indicate that Defendants' Motion to Dismiss should be granted, the Court will address each issue in the interest of completeness. *See generally Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks and citations omitted).

#### 1. Intraparty Dispute

As a threshold matter, Plaintiffs' suit is properly dismissed as it concerns an intraparty dispute. Plaintiffs are challenging the MDP's internal decisions regarding its methods for nominating party candidates for the general election. Claims based on intraparty disputes have historically been deemed non-justiciable. *O'Brien v. Brown*, 409 U.S. 1, 4 (1972). The First Amendment "confers on political parties [the right] to structure their internal party processes and to select the candidate of the party's choosing." *N.Y. State Bd. of Electors v. Lopez Torres*, 552 U.S. 196, 203 (2008). The Constitution protects "a political party's determination . . . of the structure which best allows it to pursue its political goals," and freedom of association "encompasses a political party's decision about the identity of, and the process for, electing its leaders." *Eu v. S.F. Cnty. Democratic Cent. Comms.*, 489 U.S. 214, 229 (1989) (citing *Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107, 121 (1981), and *Tashijan v. Republican Party of Conn.*, 429 U.S. 208, 217 (1986)). "Judicial intervention in this area traditionally has been approached

with great caution and restraint. It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes. . . ." *O'Brien*, 409 U.S. at 4.

Simply put, courts do not actively meddle in intraparty disputes. *See, e.g.*, *Am. Indep. Party of Mich. (Morse-Smith Faction) v. Sec'y of State*, 247 N.W.2d 17–18 (Mich. 1976) (holding that "[t]he Director of Elections correctly left to the American Independent Party the resolution of the intraparty dispute" concerning the party's slate of candidates). By intervening, a court would risk substituting its judgment for that of the party and treading on party members' constitutional rights of free association. *See Federspiel v. Ohio Republican Party State Cent. Comm.*, 867 F. Supp. 617, 622–23 (S.D. Ohio 1994), *aff'd*, 85 F.3d 628 (6th Cir. 1996). "The fact that a political party risks and often realizes internal friction does not justify intrusion by a court or state; presumably a party will be motivated by self-interest and not engage in acts or speech that run counter to its political success." *Id.* at 623 (cleaned up). Hence, the Court finds Plaintiffs' suit to be non-justiciable.

## 2. Laches

Defendants also argue that the doctrine of laches applies and prevents Plaintiffs from asserting their claims relating to the August 2024 election. "In this circuit, laches is 'a negligent and unintentional failure to protect one's rights.'" *United States v. City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). Laches is a "purely equitable doctrine," a defense to "claims of an equitable cast." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (1962).

Here, Plaintiffs' claims are equitable as they seek only those categories of relief typically available in equity such as declarative and injunctive relief. *See Mertens v. Hewitt Assocs.*, 508

6

U.S. 248, 255 (1993) (explaining that injunctive relief is a traditional form of equitable relief); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).

"A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Petrella*, *supra*. Although Plaintiffs were also pursuing relief directly with the MDP and in state court, they were not diligent in asserting the claims before this Court. They filed this action on September 11, 2024, almost three weeks after the August 2024 election. If Plaintiffs had credible claims subject to the jurisdiction of this Court, they could have brought their claims in advance of the MDP's certification of results to the Secretary of State and the Secretary of State's certification of candidates to the county clerks. But they didn't.

Second, Plaintiffs' delay prejudices Defendants. While Plaintiffs delayed, the ballots were cast, votes were tallied, and the results were certified. "As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights." *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980). *Cf. Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (finding that laches barred the plaintiff's post-election lawsuit because doing otherwise would "permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action").

In short, Plaintiffs could have lodged their claims much sooner than they did, certainly not waiting for three weeks after the election. *See, e.g.*, *King v. Whitmer*, 505 F. Supp. 3d 720, 732 (E.D. Mich. 2020) (holding that laches barred the plaintiffs' constitutional claims because the

7

"[p]laintiffs could have lodged their constitutional challenges much sooner than they did, and certainly not three weeks after Election Day and one week after certification of" the votes). Thus, the Court determines that Plaintiffs' delay results in their claims being barred by laches.

### 3. Mootness

Last, Plaintiffs' claims relating to the August 2024 election are moot. Article III of the United States Constitution empowers federal courts to hear only "cases" or "controversies." U.S. CONST. art. III, § 2, ch. 1. This is a "cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). From the "cases" and "controversies" limitation derives the mootness doctrine. A case may become moot "when the issues presented are no longer live, or the parties lack a legally cognizable interest in the outcome." *Pettrey v. Enter. Title Agency*, 584 F.3d 701, 703 (6th Cir. 2009) (quoting *UAW v. Dana Copr.*, 697 F.2d 718, 720–21 (6th Cir. 1983)). "The test for mootness is whether the relief sought, would, if granted, make a difference to the legal parties." *Patton v. Fitzhugh*, ___ F.4th ___, 2025 WL 798954, at *5 (6th Cir. Mar. 13, 2025) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997)).

In their prayer for relief, Plaintiffs request that this Court: (1) "[i]ssue a preliminary injunction compelling Defendants to immediately release to Plaintiffs" all raw voting data and a list of the 1,248 MDP members properly credentialed to vote on August 24, 2024; (2) "[o]rder Defendants to cooperate with Plaintiffs to audit the data produced" and "if such audit reveals that Plaintiff Arraf is a rightful winner . . . communicate such to the Secretary of State. . . ."; (3) "[d]eclare that the [August 2024] election and vote-counting process and its refusal to release the raw . . . voting data, was flawed, lacked transparency, and failed to comply with the federal and state constitutions. . . ."; (4) "[o]rder Defendants to implement corrective measures, including the

8

creation of a process to request a recount or otherwise challenge the results" of the election; (5) "[d]eclare that the MDP's process for nominating the party's candidates . . . violated the MDP's Bylaws and other governing documents. . . ."; (6) "[o]rder Defendants to comply with MDP Bylaws and other governing documents . . . for future MDP business. . . ."; (7) "[a]ward Plaintiffs all reasonable attorney's fees and costs as permitted. . . ."; and (8) [g]rant any other relief the Court deems proper. (Compl., PageID.39–41.) Notably, all of Plaintiffs' requests for relief relate to the August 2024 election. (*See id.*)

Plaintiffs concede that their first two requests for injunctive relief are moot. That leaves Plaintiffs with their other six requests for relief. The Court, however, cannot grant the remaining forms of relief because they are likewise no longer available. Around the time that Plaintiffs filed their Complaint, the MDP had certified Diggs and Ilitch as the winners of the election to the Secretary of State. (Compl. ¶¶ 102–04.) And "the last possible date to correct the [ballots for the] November general election," according to Plaintiffs, was September 21, 2024. (Notice of Withdrawal, PageID.670.) Furthermore, the general election concluded on November 5, 2024. The Court finds that the issue of the MDP's August 2024 nomination election no longer presents a live controversy, and the Court cannot provide any meaningful relief as it pertains to the 2024 election, rendering the matter moot.

Plaintiffs resist this conclusion. They argue that their suit is not moot because they maintain an interest in resolving their claims. However, mootness concerns the availability of relief, not the existence of a suit or an injury. *See ACLU of Ohio v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004). As discussed, what relief the Court could grant is no longer available.

Plaintiffs also argue that the capable-of-repetition-yet-evading review doctrine saves their suit. This exception is consistently featured in election disputes. *Thompson*, 7 F.4th at 525. To

9

take advantage of the exception, the plaintiff must show that the dispute satisfies a two-pronged test. *Id.* "First, the challenged action must be too short in duration for the parties to fully litigate it before it becomes moot. And second, there must be 'a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).

The Court assumes that the first prong is met here, as it commonly is in election cases. *Id.* (citing *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005)). Plaintiffs' showing falters on the second prong. To satisfy this prong, Plaintiffs must show that there is more than "'a mere physical or theoretical possibility' that the events prompting the suit will come back. . . ." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). They "need not show that the same controversy will recur 'down to the last detail.'" *Id.* (quoting *Wis. Right To Life*, 551 U.S. at 463). But here, there is no more than a theoretical possibility that this same controversy will recur. Plaintiffs do not contend that Arraf will run again. Plaintiffs also have not put forth any credible reasons or allegations for this Court to believe that a similar controversy will happen again. Accordingly, this is not a case that deserves to be revived under the capable-of-repetition-yet-evading review doctrine.

### B. Merits

Even if this Court assumes that Plaintiffs' suit is justiciable, not barred by laches, and not moot, Plaintiffs' allegations fail to state a plausible 42 U.S.C. § 1983 claim.

### 1. Under Color of State Law

As noted, Plaintiffs assert three constitutional violations under 42 U.S.C. § 1983. To bring a § 1983 claim, Plaintiffs must plausibly allege that Defendants (1) acted under the color of state law and (2) deprived Plaintiffs of some right or privilege secured by the Constitution or laws of the United States. *See Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

The first element requires a plaintiff to plausibly allege that the defendant was a state actor at the time of the constitutional violation. *See Chapman v. Higbee*, 319 F.3d 825, 833 (6th Cir. 2003); *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). The "under color of law" requirement "has consistently been treated as the same thing as the state action required by the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). As a result, private parties may not be subject to suit for a violation of a plaintiff's right to due process, equal protection of the laws, or First Amendment rights unless "the alleged infringement . . . [is] 'fairly attributable to the State[.]'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

"In holding the constitutional line between constraining government and constraining private entities," the Court asks whether "the specific conduct of which [a] plaintiff complains is fairly attributable to the government." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 281 (6th Cir. 2023) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). The following three inquiries help courts decide this issue: (i) "Does the private company's conduct involve a traditionally exclusive governmental function?"; (ii) "Is that conduct 'entwined with' government decisions or fairly attributable to the government based on a close 'nexus' between the state and the challenged conduct?"; or (iii) "Has the government compelled" the private entity's action?" *Ciraci*, 62 F.4th at 281 (citations omitted).

***Traditionally Exclusive Governmental Function.*** "To qualify 'as a traditional, exclusive public function,' the government 'must have traditionally and exclusively performed the function.'" *Id.* at 282 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)). *See also Federspiel*, 867 F. Supp. at 622 (holding that the plaintiffs' allegations "that the Party conducted its election of officers in a manner that was unverifiable and in violation of its

11

own constitution" did not create state action). The MDP in this case was conducting its election for its nominees for the University of Michigan Board of Regents. The MDP acted as a private political party, not a state actor. Accordingly, Defendants' internal nominating convention was not a traditionally exclusive governmental function.

*Entwinement.* "Entwinement may arise when a private entity partners with, directs, or is controlled by government officials." *Ciraci*, 62 F.4th at 282. Plaintiffs have not alleged any facts to suggest that Defendants partnered or entered a joint venture with government officials.

*Government Compulsion.* That leaves the last inquiry. A private entity may be deemed a state actor if the government compelled the entity to take a certain act or offered it "such significant encouragement . . . that [its] choice must in law be deemed to be that of the State[.]" *Id.* at 283 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Plaintiffs have not alleged any facts that the state either overtly or covertly encouraged Defendants to nominate Diggs or Ilitch over Arraf.

In sum, having considered all three inquiries, the Court concludes that Plaintiffs have not plausibly alleged that Defendants acted under the color of state law when they conducted the August 2024 election. Therefore, Plaintiffs' § 1983 claims fail as a matter of law.

### 2. Plaintiffs Rely on Distinguishable Cases

In support of a contrary conclusion, Plaintiffs argue that when a state allows political party committees to exercise a portion of the state's sovereignty in connection with elections, the political party acts under color of state law. They rely on two cases from the Jim Crow era: *Smith v. Allwright*, 321 U.S. 649 (1944), and *Terry v. Adams*, 345 U.S. 461 (1953), which involved attempts by the Democratic Party of Texas[1] to bar blacks from participating, either literally or

---

[1] *Terry* involved the Jaybird Democratic Association or Jaybird Party, a county political organization.

meaningfully, in primary elections. The Supreme Court sustained the claims under § 1983 because Texas left it up to private groups—*political parties*—to become perfunctory ratifiers of white voters' election choices in a manner that intentionally circumvented the Fifteenth Amendment. *See Smith*, 321 U.S. at 664; *Terry*, 345 U.S. at 466.

Both cases are distinguishable from the case at bar. Unlike Texas and the Democratic Party in *Smith* and *Terry*, where the state worked with the associations to meaningfully deprive black voters of their right to vote, Plaintiffs have not alleged any facts that suggest Michigan delegated authority to Defendants to violate the constitutional rights of Plaintiffs or anyone else. In addition, Plaintiffs have not alleged any facts that suggest that Defendants perform the traditionally public function of *choosing* candidates for the general election. Instead, it seems that the corpus of registered Democratic voters actually selected the nominees for the November 2024 general election. Plaintiffs' arguments do not compel the conclusion that they stated any plausible § 1983 claim.

### C. Supplemental Jurisdiction

Plaintiffs' remaining state-law claims are brought under this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Supplemental jurisdiction "'is a doctrine of discretion, not of plaintiff's right.'" *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (quoting *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986)). A district court's discretion in deciding whether to exercise supplemental jurisdiction, however, "is bounded by constitutional and prudential limits on the use of federal judicial power." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). "[A] federal court should consider . . . the values of judicial economy, convenience, fairness, and comity" when deciding whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, the Court may evaluate "the likelihood of jury confusion in treating divergent legal theories of relief, that

would justify separating state and federal claims for trial[.]" *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Having dismissed Plaintiffs' federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims in Counts IV, V, and VI. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(3) the district court has dismissed all claims over which it has original jurisdiction"); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims. . . ."); *e.g.*, *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Upon dismissing Brooks' federal claims, the district court properly declined to exercise supplemental jurisdiction over Brooks' remaining state-law claims.").

## IV. CONCLUSION

Therefore:

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 16) is GRANTED IN PART as to the federal claims in Counts I through III and is otherwise DISMISSED AS MOOT.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims in Counts IV through VI.


Dated:  April 14, 2025                              /s/ Jane M. Beckering
                                                    JANE M. BECKERING
                                                    United States District Judge